659 P.2d 92

**Esther L. BARTON, Personal Representative of the Estate of Louisa Murphy, Deceased, Plaintiff-Appellant,**

v.

**STATE of Idaho and Idaho State Department of Transportation, or Agency or Department of the State of Idaho, Defendants-Respondents.**

No. 13892.

Supreme Court of Idaho.

Jan. 7, 1983.

Rehearing Denied March 15, 1983.

John H. Bengtson, Randall, Bengtson, Cox & Risley, Lewiston, Paul Sinnitt, Sinnitt & Sinnitt, Inc., P.S., Tacoma, Wash., for plaintiff-appellant.

Robert L. Trabert, Chief Legal Counsel, Idaho Dept. of Transp., Boise, for defendants-respondents.

HUNTLEY, Justice.

On this appeal we are asked to determine the extent, if any, of the State's liability on a contract to provide highway access points, when those access points were closed by the State twenty-two years after the contract was consummated. Respondent State of Idaho entered into negotiations in 1953 with Louisa Murphy[1] to purchase a parcel of Murphy's property in North Lewiston for highway construction purposes. Pursuant to negotiations, the parties entered into an agreement whereby the State would provide access to Murphy's business properties from U.S. Highway 95 and would pay Murphy $1,000 for the land purchased from her. Murphy in turn agreed to accept payment without resort to the courts and to encourage other land owners to deal reasonably with the State. The project was constructed in 1955. The State closed the access points in 1977 to realign the highway and to change traffic flows.

The district court found that an oral contract had been entered into between the parties whereby the State agreed to provide two access points to Murphy's business properties and that there was no agreement between the parties as to the length of time the road design would remain unchanged. Based on these findings the trial court determined as a matter of law that under the express agreement of the parties the State was required to construct, but not to maintain, the two access points on the highway. The trial court refused to imply a perpetuity clause into the contract, holding that: (1) there was no evidence to support imposing such an onerous liability on the State; (2) there was no legal precedent for making a

---

1. This action was instituted by Murphy in 1978. Thereafter she died and Esther Barton, as personal representative of Murphy's estate, was substituted as party plaintiff.

perpetuity clause part of this type of contract by operation of law; and (3) such a clause would be void as against public policy and could not be specifically enforced. The trial court held that the strongest restriction on the State's right of action which could be created by implication of fact or operation of law is that the State could not, for arbitrary or capricious reasons, alter the design bargained for by Murphy.

### I.

The first issue we address concerns the duration of an obligation under a contract when the contract is silent as to duration and when the parties' intent as to duration cannot be ascertained.

### A.

■ Appellant argues that we should construe the agreement between the parties to impose a perpetual duty on the State because the parties intended to be bound in perpetuity. The trial court found that there was "absolutely no discussion between Mrs. Murphy and any agent of the Highway Department as to the length of time the new road design would remain unchanged and as a result the agreement between the State and Mr[s]. Murphy contained no terms concerning this issue." Obviously, the parties did not manifest their intent to be perpetually bound, if they had such intent. Absent clear manifestation to be perpetually bound, we will not infer such intent. Where a contract is not expressly made perpetual by its terms, construction of such contract as perpetual is disfavored. *Southern Bell Telephone & Telegraph Co. v. Florida East Coast Railway Co.,* 399 F.2d 854 (5th Cir.1968); *see Shultz v. Atkins,* 97 Idaho 770, 554 P.2d 948 (1976); *see also Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc.,* 608 P.2d 890 (Kan. 1980); *City of Billings v. Public Service Commission,* 631 P.2d 1295 (Mont.1981).

■ In the present case, the only written evidence of this contract was a letter stating merely that "a 50 foot opening is being provided at 25th Street North ... A 100 foot opening is being provided at 7th Avenue North." There was no oral agreement that the State was to be bound in perpetuity. The attorney for the state, who had negotiated the agreement with Mrs. Murphy and who appeared as a witness on her behalf in this matter, stated: "Mrs. Murphy repeatedly advised your affiant that ... she would negotiate and deal with the said Department [of Transportation] only on the basis that access to and from the proposed reconstructed highway would remain available to certain of her remaining property ...." We deem this evidence insufficient to find that the parties intended to be bound in perpetuity.

■ We are also unwilling to imply—as a matter of law—a term in the contract which would bind the State in perpetuity. In our view, such a term would violate public policy. In *Shultz v. Atkins,* 97 Idaho 770, 775, 554 P.2d 948, 953 (1976), we questioned without deciding "whether a definite promise to do, or not to do, an act or a series of acts in perpetuity is legally enforceable as such a promise may be contrary to public policy." Analogous are the series of cases decided by this Court holding that a city or the State may not permit a private person to erect or maintain a permanent obstruction in a public street, or convey the street or rights to the street to a private person, because such contracts would be void as against public policy. *See Boise City v. Sinsel,* 72 Idaho 329, 241 P.2d 173 (1952) (city council without authority to make a valid contract permanently alienating city street or permitting building a warehouse thereon); *Yellow Cab Taxi Service v. City of Twin Falls,* 68 Idaho 145, 190 P.2d 681 (1948) (use of street for taxi stand for 16 years does not create any rights in the user as against the city); *Keyser v. City of Boise,* 30 Idaho 440, 165 P. 1121 (1917) (city is without authority to grant a private person a permit to erect or maintain a permanent obstruction in a private street for a private purpose); *Boise City v. Wilkinson,* 16 Idaho 150, 102 P. 148 (1909) (dedication of street to city precluded the legislature and the mayor of the city from validly conveying title to private individual);

*Boise City v. Hon,* 14 Idaho 272, 94 P. 167 (1908) (dedication of street to city prevented later conveyance to private individual from being effective).

In *Boise City v. Wilkinson, supra,* we stated:

"Neither the legislature nor the mayor-trustee had any authority to dispose of a street that had been dedicated to the public for the reason that such action would change the character of the trust in relation to the land dedicated for street purposes." 16 Idaho at 164, 102 P. at 152–53.

Similarly, in the present case, any agreement made by the State to provide access in perpetuity would violate "the character of the trust in relation to the land dedicated for street purposes."

In *Western Cab Co. v. Kellar,* 523 P.2d 842, 845 (Nev.1974), it was stated that "[a]ll contracts the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void . . . ." To impose an obligation on the State to leave highway designs unchanged forever would work a detriment to the public interest. Here the highway design was changed, not in order to breach the State's contract with Murphy, but to realign the highway and to change traffic flows. Traffic patterns change as well as do the public's needs. The State's power to change its road systems to meet the public's health, safety and welfare needs cannot be circumscribed by a contract in perpetuity, as such would be void as against public policy.

### B.

▆ The trial court, as a matter of law, held that it would not impose an obligation on the State to be bound for "any particular length of time" where the contract is silent as to duration and the parties' intent cannot be ascertained. The majority rule, and the one which has been followed in Idaho, is that where a contract is silent and the parties' intent cannot be ascertained the parties are bound for a reasonable time. In *Shultz, supra,* we stated:

"When the duration of the promised performance is not provided for in the contract, a court may imply a promise that the performance is terminable at the will of the parties if reasonable notice of termination is given and if performance has been rendered for a reasonable time." 97 Idaho at 775, 554 P.2d at 953.

*See Freeport Sulphur Co. v. Aetna Life Insurance Co.,* 206 F.2d 5 (5th Cir.1953); *Bowen v. Watz,* 5 Ariz.App. 519, 428 P.2d 694 (1967); *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union, Local 16,* 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325 (1968); *Tavel v. Olsson,* 91 Nev. 359, 535 P.2d 1287 (1975); *Cromwell v. Gruber,* 7 Wash.App. 363, 499 P.2d 1285 (1972). To determine whether a contract has been performed for a reasonable time we must examine the subject matter of the contract, the relationship of the parties and the circumstances surrounding the transaction. *Tavel v. Olsson, supra; Cromwell v. Gruber, supra.*

▆ We turn first to whether the State's maintenance of the access points for twenty-two years constituted a reasonable time for performance. This contract involved a public highway which, by its very nature, must be subject to change to protect the public's safety and ease of travel. This is brought home by the fact that the State entered into this contract only because of its need to change the 1953 road design. The contract was entered into between the State and a private citizen in lieu of an eminent domain proceeding. The State was not forced to contract with Murphy to acquire the land in question. The State could have instead instituted an eminent domain proceeding where it may have undergone more expense but would not have been bound to either provide or to maintain the access points. In light of the foregoing, we hold that twenty-two years of performance under the circumstances of this case constituted a reasonable time for performance. On the basis of this determination we do not need to reverse the trial court's refusal to apply the majority rule as set forth in *Shultz. Foremost Insurance Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981).

Under the *Shultz* holding, a party may terminate his performance under a contract which is silent as to duration upon reasonable notice to the other party. The record establishes reasonable notice (three years) was given in that Mrs. Murphy, Mrs. Barton and their attorney attended a public hearing conducted by the Highway Department in 1974, wherein the plaintiff entered objection to the proposed closing of the two access points. A second notice was provided by the State when it forwarded Mrs. Murphy the plans in January 1977.

## II.

The appellant alternatively argues that this Court can grant her relief under the "change of plans" doctrine. In essence, the "change of plans" doctrine is as follows: once a condemning authority introduces construction plans in a proceeding to condemn property for a public purpose, it is bound to construct the project according to those plans. If a change in plans prior to construction causes additional damage to the landowner, the damage issue is reopened. *Olson v. State*, 12 Ariz.App. 105, 467 P.2d 945 (1970); *Feuerborn v. State*, 59 Wash.2d 142, 367 P.2d 143 (1961). The "change of plans" doctrine is inapplicable to the case at bar. Here the State did not change, *prior to construction*, the plans relied upon in making a damages determination. The State built the road according to the plans shown to Murphy and maintained the access points for twenty-two years.

The judgment is *affirmed*. Costs to respondent.

WALTERS, SWANSTROM and SCOGGIN, JJ., Pro Tem., concur.

DONALDSON, J., sat but did not participate.