742 P.2d 397

**Ellis MERRITT, Plaintiff-Respondent,**

v.

**The STATE of Idaho, John V. Evans, Governor; Carl C. Moore, Lloyd F. Barron, John M. Ohman, Idaho Transportation Board, and Darrell V Manning, Idaho Transportation Department, Defendants-Appellants.**

**No. 15945.**

Supreme Court of Idaho.

Oct. 15, 1986.

Rehearing Granted Feb. 2, 1987.

On Rehearing July 10, 1987.

Robert L. Trabert, Patrick Fanning, and Leonard G. Hill (argued), Boise, for defendants-appellants.

Wayne E. Davis, Caldwell, for plaintiff-respondent.

HUNTLEY, Justice.

Merritt owns an unimproved lot at the corner of North 10th Avenue and Interstate 84 in Caldwell, Idaho. Prior to the construction of an interchange at North 10th and I-84, Merritt had access directly to his property from North 10th via an eighteen foot wide curb cut and indirectly from North 10th via a similar curb cut to an alley bordering the 150 foot northeast edge of the property. Access to the alley from North 9th Avenue continues to be available. Two curb cuts allow access across the southwest edge of the property which borders East Freeport Street.

In January 1985, the state finished construction of the interchange. Because it was financed mainly with federal moneys, the interchange had to meet certain federal highway access control standards. One access standard bars access to North 10th within 300 feet of the I-84 on and off ramps where they meet North 10th. The purpose of the standard is to reduce traffic congestion and promote safety near interchanges. Traffic flow projections estimate 20,000 cars a day will pass the Merritt property on North 10th in 1985, with 37,300 cars passing each day within twenty years.

In this particular case, the limited access zone extends along North 10th only 235 feet, to the point where North 10th intersects East Freeport Street. This deviation had to be approved by the Federal Highway Administration and state design engineers. It was allowed because of the preexisting block length in Caldwell and because East Freeport may become a major arterial bringing traffic to North 10th Avenue.

As a result of the federal access standard, the state eliminated the eighteen foot

curb cut, preventing access from North 10th Avenue to the Merritt property. A fence was also constructed (on public land) running along the entire edge of the Merritt property bordering North 10th Avenue. The fence crosses the alley, barring entrance to the alley from North 10th Avenue, and thereby indirectly restricting access to the Merritt property via one end of the alley. After construction of the North 10th interchange, there is access to the Merritt property via the two curb cuts along East Freeport and indirectly via the other end of the alley, where it connects with North 9th Avenue.

Merritt intended to build a gas station on the vacant lot. He claims the denial of access to the proposed station from North 10th will hamper the ability of large fuel trucks to make deliveries to the station and will increase congestion at the intersection of East Freeport and North 10th by requiring vehicles on North 10th to first turn onto East Freeport to reach the station, thereby defeating the purpose of the state in limiting access to North 10th.

Merritt's complaint alleges inverse condemnation, that is, that the limitation of access to his property was a taking of property entitling him to damages. The state moved for summary judgment on the ground that the limitation of access was not a taking, but merely a regulation for the public health, safety or welfare. The district court denied the state's motion for summary judgment without findings of fact or conclusions of law, but by its denial implicitly held a taking had occurred, there being no dispute as to the fact that the access to Merritt's land has been limited. The judge issued a Rule 54(b) Certificate certifying the order as final and the state appealed. This Court thereafter ruled that the order was not appealable as a matter of right, but it entered an order accepting the appeal as a permissive appeal from an interlocutory order under Rule 12 I.A.R.

The issue on appeal is whether the district court erred in denying the State's motion for summary judgment. The district court reasoned the State's limitation of access to the Merritt property was a compensable taking of property. There being no genuine issues of material fact, the district court's adoption of Merritt's legal analysis of the case in denying the State's motion for summary judgment amounted to a grant of summary judgment for Merritt, from which the State appeals. The State argues that because of the remaining access it did not take Merritt's property, but merely regulated the property through an exercise of its police power in furtherance of the public safety and welfare.

Several cases support the State's position. In *Johnston v. Boise City*, 87 Idaho 44, 390 P.2d 291 (1964), this Court held the closing of a curb cut was not a taking of property. The facts of *Johnston* are as follows: The city closed a curb cut providing access to an auto dealership. Double doors opposite the curb cut were used only by pedestrians and had not been used by vehicles for twelve years. Furthermore, there was a parking meter in the middle of the curb cut where vehicles had been parking for many years, and would continue to park. Vehicles entering the building used a curb cut on another street adjacent to the building, which was situated on corner property. Additional access to the building was available from an alley.

The city noted several problems with the curb cuts in general. They required additional efforts in street cleaning. The incline, when slippery, was hazardous to those alighting from cars. The accumulation of ice and water at the curb cuts burdened maintenance of city streets, and those cuts in active use burdened the city's regulation of traffic and parking. The court held that the closing of the curb cut bore a reasonable relationship to the public health, safety, or general welfare and, therefore, the landowner was not entitled to damages for any resulting injury. The court reasoned the alternate curb cut made the city's closing of one curb cut reasonable. The property in *Johnston* remained accessible to vehicles on two of four sides after the curb cut on the third side was closed, the latter curb cut having been unused by vehicles for twelve years.

A few Idaho cases have ruled the state regulation of private access onto a public road is a taking. In each case, vehicular access to the property was destroyed. Each case ruled the property owner had a right to regain access to the public road or to be compensated for the taking of access. *Weaver v. Village of Bancroft*, 92 Idaho 189, 193, 439 P.2d 697, 701 (1968); *Hughes v. State*, 80 Idaho 286, 295–96, 328 P.2d 397, 402 (1958); *Cf. Village of Sandpoint v. Doyle*, 14 Idaho 749, 758–60, 95 P. 945, 947–48 (1908).

In *Hughes*, business property was located on a corner of an intersection. The government raised the level of one street, making the intersection impassable to vehicles, causing the intersection to be closed and vacated. Business property had two points of access for business purposes; one on each of the intersecting streets prior to the time one of the streets was raised. The property owners appealed the district court's grant of the government's motion to strike the property owner's allegation that the fill and approach raising the level of one street deprived them of their right of vehicular access to their property. This Court reversed, holding that if the property owners proved vehicular access to their business property had been "destroyed" then such destruction of access would be a taking. *Hughes*, 80 Idaho at 295–96, 328 P.2d at 402. The court did not discuss the merits of whether the loss of access to one of two adjacent streets and the vacating of the adjacent intersection did or did not "destroy" vehicular access to the parcel in issue.

In *Sandpoint*, this Court held a private property owner has a property right in vehicular access to a public bridge, where the bridge is the only means of vehicular access to the property. *Sandpoint*, 14 Idaho at 759, 95 P. at 948.

In *Mabe v. State*, 86 Idaho 254, 385 P.2d 401 (1963) this Court had under consideration a situation where no property was taken and no access to the abutting highway was interfered with, but the landowner claimed damage because access was provided to the new interstate highway

only by traveling several miles in either direction along the existing "old" highway. This Court held that the resulting diversion of traffic was not compensable.

*Oregon Investment Co. v. Schrunk*, 242 Or. 63, 408 P.2d 89 (1965), involved a downtown Portland parking lot which was bounded by streets on three of four sides. The city permitted access from two, but not from the third street. The lot owners-lessees challenged the city's refusal to authorize access onto the third street as a compensable taking under the Oregon Constitution. The curb lane of the third street was a twenty-four hour bus loading zone. *Id.* at 90.

The permit for access to the street was denied because of concentrated pedestrian traffic, the many people waiting for buses in the area of the proposed curb cut, as well as the need to promote the safe and orderly movement of traffic. *Schrunk*, 408 P.2d at 92–93. Since two points of access remained to the parking lot, the city's action was held not unreasonable or arbitrary, and was therefore not a taking. Any resulting lost property value or business profits did not constitute a legal injury for which compensation was due. *Schrunk*, 408 P.2d at 93.

Thus, in *Schrunk* the court ruled that where access to private property along four routes from public ways exists, two are blocked, and the remaining access is reasonable, then such is a reasonable exercise of the police power to provide for the public safety and welfare and is not a compensable taking of property under the Idaho or Federal constitutions:

> We have no occasion to express an opinion as to whether vehicular access may be denied to an abutting owner whose property fronts on only one street. We agree, however, with those courts which hold that where the property fronts on more than one street, access may be denied, under particular circumstances, at one of the streets if adequate means of access remain to the owner at the other street or streets. To us this seems a reasonable exercise of the power of the city to provide for the public safety, con-

venience and welfare under the conditions created by modern motorized traffic in a large city.

*Schrunk*, 242 Or. 63, 408 P.2d 89, 93 (1965).

■ In the instant case, there having been no destruction of vehicular access to the Merritt property, and the remaining vehicular access being reasonable, there was no taking of the Merritt's property which would entitle him to compensation.

The district court erred as a matter of law in commenting that there had been a taking of the alley access to the Merritt property. First, the alley runs along the northeastern edge of the Merritt property, allowing indirect access. The alley was closed at only one end, allowing access from the other end. The closing of the alley on one end had no effect on access to the Merritt property from the alley itself. The remaining opening to the alley might require a car that would have used the alley from North 10th to drive an extra block to reach the Freeport Street entrance to the Merritt property. However, the requirement of merely a more circuitous route to reach property is merely a by-product of a regulation, and does not constitute a taking. *Cf. Powell v. McKelvey*, 56 Idaho 291, 315–16, 53 P.2d 626, 636–37 (1935).

■ Second, no private party, such as Merritt, has a right to have the North 10th Avenue entrance to the alley kept open. Government power over public ways is "exclusive and unlimited." *Cf. Foster's Inc. v. Boise City*, 63 Idaho 201, 211, 118 P.2d 721, 725 (1941). The power to regulate the streets and sidewalks by controlling and limiting traffic was within the authority of the Idaho Transportation Board at the time of the restriction of access to the Merritt property. I.C. §§ 40–120(16); 40–2401, repealed by S.L. 1985 Ch. 253 § 1. The closing of an entrance to the alley was, as a matter of law, a government regulation and not a taking of property. Private property owners do have a vested property right in ingress and egress between an adjoining alley and their private property. *Sandpoint*, 14 Idaho at 757, 95 P. 947. That right is appurtenant to their land. *See Johnston*, 87 Idaho at 51, 390 P.2d at

294. They do not, however, have a vested right in ingress to and egress from the alley to an adjoining street.

Reversed. Costs to appellant. No attorney fees awarded.

DONALDSON, C.J., and BAKES, J., concur.

SHEPARD, Justice, dissenting.

The facts in this action are not in dispute. Merritt owns a corner lot in Caldwell, Idaho, one side of which directly abuts on Tenth Avenue and one side abuts on Freeport Street which intersects with Tenth Avenue. Merritt had access to Freeport Street and also access to Tenth Avenue which was represented by an 18-foot curb cut. The State, in conjunction with the construction of a portion of the Interstate highway, designated Tenth Avenue as a feeder for traffic to and from the Interstate highway. The State improved Tenth Avenue within the limits of the existing right-of-way. In conformance with federal regulations the State designated that portion of Tenth Avenue as non-access and placed a fence along the highway right-of-way, thus shutting off Merritt's existing access to Tenth Avenue. On a third side of Merritt's property, paralleling Freeport, was an alley which also intersected Tenth Avenue. The State erected a barrier at that intersection, thus prohibiting traffic from the alley to Tenth Avenue.

I do not believe this Court has previously squarely faced the issued presented here, *i.e.*, may an owner of property which abuts upon and has access to a public street suffer the closure of that access and receive no compensation therefor only because he has access to another street.

In *Hughes v. State*, 80 Idaho 286, 328 P.2d 397 (1958), the Court was faced with a similar set of facts but engaged in little analysis. There, the State reconstructed Third Street in St. Maries which previously descended a hill and at the bottom thereof intersected with Railroad Avenue. It then crossed over railroad tracks and a bridge over the St. Joe River. The Hughes' property lay at the intersection of Third Street

and Railroad Avenue with frontage on both streets. The State placed a fill on Third Street, thereby overpassing the railroad tracks and Railroad Avenue, and continuing on that level on a new bridge across the river. Thereafter the Hughes' property was denied access to Third Street by a five to six foot nearly vertical bank of earth. However, the access to Railroad Avenue remained. The Court ruled that the Hughes' access to Third Street was taken and therefore compensable. Since *Crane v. City of Harrison*, 40 Idaho 229, 232 P. 578, had held that damage resulting from a change of grade was not compensable, it was overruled.

The Court stated, "The easement ... of access, possessed by an owner of land abutting on a street or highway, constitute property of which he cannot be deprived without compensation, ... although he does not own the fee of the street."

In *State ex rel. Rich v. Fonburg*, 80 Idaho 269, 328 P.2d 60 (1958), the defendant's property abutted on, and had access to, U.S. Highway 95 at the point where the highway began to ascend Culdesac Hill. The State condemned a portion of the Fonburg property for the purpose of constructing a new highway which diverged from the old route at the point of the Fonburg property. Fonburg sought damages for the taking of his property, the denial of access to the old highway, and the denial of access to the new highway location. He, of course, received damages for the property actually taken. The Court also allowed *damages for the taking of his access to the old highway*, but refused damages for denial of access to the new highway stating, " ... nor is the condemnee entitled to damages because he is not granted unrestricted access to the new part of the road being constructed. There is no inherent right of access to a newly relocated highway.... The condemnee never having had access to the new highway there is no easement of access taken in this proceeding. There can only be compensable damages for an existing easement, and when one does not exist, there is none to take."

In *Mabe v. State*, 86 Idaho 254, 385 P.2d 401 (1963), no property was actually taken, but a claim was made for damages for failure to provide access to a new highway which was located approximately one-half mile away and parallel to the old highway. Mabe's property abutted on and had access to the old highway. The old highway continued in existence and continued to provide access from the Mabe property to the Interstate highway, but only by way of travel to Mountain Home. Although the argument was made that Mabe suffered merely a circuity of traffic damage, the Court disagreed without setting forth any rationale therefor. Hence, Mabe was awarded damages for a taking of access.

In *State ex rel. Moore v. Bastian*, 97 Idaho 444, 546 P.2d 399 (1976), the State condemned a portion of a commercial corner lot which abutted on both Addison and Washington Streets in Twin Falls. On one of those streets the State placed a raised centerline median to prohibit traffic from turning left. The condemnee sought damages for denial of access to that street. The Court said:

"*While it is true that defendants have a property interest in access to public streets* (citations) nevertheless not all *impairments* of that right by the state are compensable or per se unreasonable. (Citations) That right of access does not encompass a right to any particular pattern of traffic flow or a right of direct access to or from both directions of traffic and we find no compensable *impairment* of access here. All who wish to reach defendant's property could do so with relatively minor inconvenience." (emphasis supplied)

Curiously, Donaldson, C.J., with whom Bakes, J. concurred, dissented, stating:

"The right of access of a property owner to an abutting public street has long been the subject of judicial discourse in Idaho. A thorough review of authority reveals it is a right which Idaho courts have been particularly careful to protect.... Nor is interference with access merely an element of severance damages to be considered in an action for condem-

nation, but is in itself a property right the taking of which may be compensated in an action for inverse condemnation, that is 'whether or not accompanied by a taking of physical property.'" (Citing both *Hughes* and *Mabe*).

Although our previous cases are not totally clear, I believe the law of Idaho is, or should be, that a landowner whose property abuts a public street or road and enjoys access thereto cannot be summarily deprived of that property right without compensation. This I believe regardless of what the law may be in other jurisdictions. Although the public necessity and convenience may demand the taking of property, such may not be done without an award of just compensation. No argument regarding the safety or convenience of the general public justifies the taking of such a property right absent just compensation.

If the Merritt property was an interior lot on the same block and was left totally inaccessible because of the fence built along Tenth Avenue, I doubt we would deny compensation. *See Weaver v. Village of Bancroft*, 92 Idaho 189, 439 P.2d 697 (1968), wherein the Court awarded damages stating: "It is undisputed in the instant case that appellant was cut off from all vehicular access both to and from his property and that this property is in effect isolated from the public right-of-way." If the Merritt property was an interior lot bounded on the rear by an alley, I likewise doubt that the Court would deny compensation in that case. Here, by the mere fortuity that Merritt's property is a corner lot with access remaining to Freeport Street, we nevertheless deny him compensation, albeit at this juncture we must assume that the value of his property has been severely diminished by the action of the State. It is clear to me that by the denial of the previously existing easement of access to Tenth Avenue, the State has taken a portion of Merritt's property just as surely as if they had physically appropriated half of his lot.

I believe the foregoing result is mandated although governmental entities have and should continue to exercise authority over the flow of traffic. If, for example,

left turns were prohibited from Tenth Avenue onto Merritt's property, I would hold that such was not a taking of a property right and therefore not compensable. If Tenth Avenue were designated a one-way street I would hold that a claim for diminishment of traffic was noncompensable. If a barrier were placed at the intersection of Freeport and Tenth Avenue to prohibit traffic entering Tenth from Freeport, I would hold that such resulted in circuity of traffic and was not compensable. If the size or number of curb cuts providing access from Tenth Avenue to Merritt's property were reasonably limited, I would hold that was not a denial of access but merely reasonable regulation, and would hence deny compensation.

Thus, I believe any discussion of the closure of the alley entrance to Tenth Avenue falls within the above categories, within the authority of the government entity, constitutes mere circuity of traffic, and is hence noncompensable.

The ultimate question presented here, however, falls in none of the above categories. Squarely presented is the taking of Merritt's previously existing access to Tenth Avenue without any compensation therefor. There is not here presented any argument that such access presents any danger to foot traffic on the sidewalks paralleling Tenth Avenue. It is simply a matter of attempting to speed up traffic along Tenth Avenue by the elimination of Merritt's right of access. I would affirm the order of the trial court denying the State's motion for summary judgment.

BISTLINE, Justice, dissenting.

*Lobdell v. State of Idaho*, 89 Idaho 559, 407 P.2d 135 (1965), was an earlier inverse condemnation case much like the one under review, and for that reason the parties were asked to comment on its applicability, and have done so. Additionally, we have access to the record in that case, and also the briefs—all being available through the office of the Clerk.

*Lobdell* was filed in 1957, but not tried until June of 1962, on the issues raised by the Lobdells' amended complaint and the

state's answer thereto filed ten days before trial. The Lobdells contended that the state's project greatly impaired and destroyed access to their property. The state alleged that it had provided adequate access, and denied any liability for compensation. 89 Idaho at 562, 407 P.2d 135. A finding of the trial court was as follows:

6. At the trial of this action the defendant stipulated that the erection of the curb in 1957 as aforesaid, constituted a taking, within the meaning of the law of condemnation, and that the plaintiffs were entitled to damages therefor. *Id.* at 563, 407 P.2d at 137.

Counsel for the Idaho Transportation Board, having on hand its files and records in the *Lobdell* case has provided us with a portion of its trial brief (not part of this Court's record on the appeal) which supplies the reason given by the Department at that time:

"To clarify another matter, which may or may not be of sufficient importance to require clarification, Defendant concedes a 'taking' because of inept approaches, not because of the erection of a curb before the property concerned. If the approaches constructed had provided satisfactory access to the property, then Defendant believes it would have incurred no liability because of the police power concept." Appellant's Supplemental Brief, p. 2.

That statement appears to have been offered up to the *Lobdell* trial court in the interests of saving face where the Highway Department's inept approaches had for five years deprived the property owners of the use of their property. The approaches were "inept" because, as the property owner's brief on file in this Court shows, the Highway Department constructed a 300 foot concrete barrier curb where none had previously existed, leaving one 40 foot cut about in the middle of the property and a cut of less than five feet on the property's west end. The Lobdells' property was mainly used as a truck stop operation, and they were forced out of business.

The real reason for the state's concession of a taking is found in the state's brief,

also on file in this Court, where, at page 16, this statement is made:

While no clear cut rule existed in 1957 at the time respondents constructed the highway adjacent to appellants' premises, nevertheless on several occasions since then this court has determined and declared that access rights are a property interest. See *Hughes v. State,* (1958), 80 Idaho 286; 328 P.2d 397. Clearly then when the state acquires existing access between privately owned real property and the public highway it comes into possession of a real property interest. This rule has been applied to some forms of impairment. See *State ex rel Rich v. Fonburg,* (1958), 80 Idaho 269; 328 P.2d 60, and *Farris v. City of Twin Falls,* (1958 [1959]), 81 Idaho 583; 347 P.2d 996.

That brief also could have cited the then even more recent case of *Mabe v. State,* 83 Idaho 222, 360 P.2d 799 (1961), which reaffirmed *Hughes,* and also discussed *Farris* and *Fonburg,* of which the Highway Department had to be well aware when it stipulated to a taking in the *Lobdell* case.

The importance of the *Lobdell* case is, then, that the state has recognized "that access rights are a property interest." In *Mabe* this Court quoted from the Ninth Circuit's opinion in *Winn v. United States,* 272 F.2d 282 (9th Cir.1959), where that court had been cited to *Hughes:*

Here, we have before us allegations of destruction and impairment of access with resulting reduction in the value of appellants' property, none of which are present in the *Winn* case.

Idaho is firmly committed to the rule that access to property from an existing highway is a property right. *Village of Sandpoint v. Doyle,* 14 Idaho 749, 95 P. 945, 17 L.R.A., N.S., 497; *Continental Oil Co. v. City of Twin Falls,* 49 Idaho 89, 286 P. 353; *Independent School Dist. No. 1 of Twin Falls County v. Continental Oil Co.,* 49 Idaho 109, 286 P. 360. That the curtailment of, or interference with access to real property is to be considered as an element of damages in an action for condemnation has been

recognized by this court in the following cases: *State ex rel. Rich v. Fonburg,* 80 Idaho 269, 328 P.2d 60; *State ex rel. Rich v. Dunclick, Inc.,* 77 Idaho 45, 286 P.2d 1112. This court has further held interference with access to be, in itself, a taking of a property right, compensable in damages awarded by way of "inverse condemnation", and not merely as an item of severance damages in a condemnation suit. *Farris v. City of Twin Falls,* 81 Idaho 583, 347 P.2d 996; *Hughes v. State,* 80 Idaho 286, 328 P.2d 397, 402. In the *Hughes* case this court stated:

> "Our review of Idaho's Constitution, statutes and decisions, clearly shows that the power of eminent domain extends to every kind of property taken for public use, including the right of access to public streets, such being an estate or interest in and appurtenant to real property; and since such right of access constitutes an interest in, by virtue of being an easement appurtenant to, a larger parcel, the court, jury or referee must ascertain and assess the damages which will accrue to the portion not sought to be condemned by reason of the severance of the portion—the right of access—sought to be condemned, and the construction of the improvement, I.C. sec. 7–711."

. . . .

In *Farris v. City of Twin Falls,* supra (decided subsequent to *Winn v. United States,* supra), this court was confronted with the problem of evaluating the sufficiency of a complaint attacked by general demurrer. The *Farris* case, also an inverse condemnation action for damages for obstruction of the right of access to real property, held that the particular complaint stated facts sufficient to constitute a cause of action. This court in reversing the trial court, pointed out that "Appellants have alleged, among other things, that respondent city caused to be constructed an obstruction to the entrance of their property and that by reason thereof the reasonable market value of such property has been damaged and decreased, the complaint states a cause

of action and it was reversible error to sustain the general demurrer." *Mabe, supra,* 83 Idaho at 227–28, 360 P.2d at 801–02.

*Johnston v. Boise City,* 87 Idaho 44, 390 P.2d 291 (1964)—unlike *Mabe,* unlike *Hughes,* unlike *Farris,* and unlike *Lobdell* —was *not* an inverse condemnation action. It was, as the very first paragraph of the opinion tells the alert reader, an "action to enjoin respondent Boise City permanently, from proceeding with an order of the common council requiring the replacement of curb cuts adjacent to appellant's two parcels of land." *Id.* at 48, 390 P.2d at 292. *Foster's Inc. v. Boise City,* 63 Idaho 201, 118 P.2d 721 (1941), was of the same ilk: "Suit by appellants to perpetually enjoin the City of Boise from enforcing Ordinances 1780 and 1793, relating to the installation, purchase, and use of parking meters on certain streets of the city. Judgment for defendants. *Affirmed.*" *Id.* at 203, 118 P.2d at 722. The underlying basis for the *Johnston* decision was largely upon the proposition that what the City hath given, yea, verily, so mayeth the City take back:

> Under the provisions of Boise City Code § 14–209, a permit from the council is first required before a curb cut may be made, such permit to be granted after application and consideration by the council. This section of the Boise City Code also provides that the city retains the right to order replacement of the curb at the expense of the adjacent property owner, and provides the procedure for such replacement. The granting or denial of a permit, and the issuance or denial of an order for replacement are all discretionary with the council; it is inherent that this discretion will be reasonably, not arbitrarily or capriciously, exercised. In the instant action no issue was presented as to the validity of Boise City Code § 14–209, nor was any contention advanced that the initial curb cuts were not made pursuant to permit. *Johnston, supra,* 87 Idaho at 53–54, 390 P.2d at 296.

Moreover, the Court's opinion went on to add:

The present curb cut opposite the Grove street property does not comply with City's specification for curb cuts. The findings of the trial court to the effect that the curb cuts related to appellant's premises were not in fact being used and were unnecessary is fully sustained by the evidence. It is our conclusion the record discloses no unreasonable exercise of discretion and the conclusions of law and decree based on the findings of fact are correct. *Id.* at 54, 390 P.2d at 296 (footnote omitted).

The majority opinion distorts prior case law by saying that "a few Idaho cases have ruled the state regulation of private access onto a pubic road is a taking," and then adding that "in each case vehicular access to the property was destroyed"—citing only *Weaver v. Village of Bancroft,* 92 Idaho 189, 439 P.2d 697 (1968), and the *Hughes* case. All of the cases, however, do not so speak, but rather are couched in terms of obstructions to the right of access which impair or destroy it. In fact, the *Bancroft* case, citing *Lobdell* uses this exact language:

The measure of damages for the destruction or impairment of a right of access is the difference between the fair market value of the property immediately before the taking and the fair market value of the same property immediately after the destruction or impairment of such access. *Weaver, supra,* 92 Idaho at 193, 439 P.2d at 701.

In order to establish a taking, all that is required is that there be alleged and proven a government obstruction to access which diminishes the fair market value of the property. Under the *Rueth* decision that is in the first instance a matter which the trial court can decide, either with or without an advisory jury. The actual amount of compensation due the property owner, however, is for a jury to determine, if requested.

The majority opinion by sheer *ipse dixit* declares that: "The closing of an entrance to the alley was a government regulation as a matter of law...." I am unable to see where any authority is provided, or for

that matter exists, to support that principle—and certainly not in this case where the alley once entered at the one end terminates in a cul de sac—which of itself might greatly depreciate the value of the land owner's property from a fire safety perspective. Having not before seen a more clear example of a taking of the property right of access, I strongly dissent.

## ON REHEARING

HUNTLEY, Justice.

Respondent's Petition for Rehearing having been granted, and oral argument having been held, the Court continues to adhere to the views expressed in the Court's opinion issued October 15, 1986.

The Court has considered *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California,* — U.S. —, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) and find it to be factually distinguishable as to the extent of the denial of use of the property.

DONALDSON and BAKES, JJ., concur.

SHEPARD, C.J., adheres to previous dissent.

BAKES, Justice, concurring specially:

Governmental regulation or limitation of access to public streets is only one form of police power regulation which impinges on property rights, thereby implicating the provisions of the fifth and fourteenth amendments to the United States Constitution and art. 1, § 13, of the Idaho Constitution, which prohibit government from taking property without due process and payment of just compensation. There are several other ways in which government can exercise its police power which results in the limitation on use of real and personal property. *Andrus v. Allard,* 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979) (regulation by the Secretary of Interior prohibiting sale of Indian feathers and artifacts held by private parties which destroyed practically all monetary value not a taking); *Keystone Bituminous Coal Ass'n v. De-*

*Benedictis,* —— U.S. ——, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (state regulation prohibiting the removal of coal to prevent subsidence of surface, held not a taking); *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (zoning regulation severely restricting use of property, thereby destroying most of the market value, held not a taking).

The Supreme Court of the United States has been struggling, to date unsuccessfully, to come up with a meaningful standard for evaluating how far government can go pursuant to the police power before restrictions and limitations on the use of property constitutes a taking under the fifth and fourteenth amendments to the United States Constitution. *Keystone Bituminous Coal Ass'n v. DeBenedictis, supra* at 1247 (" ' "this court has generally 'been unable to develop any "set formula" for determining when "justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.' " ' ") Without a meaningful standard from the United States Supreme Court, the state courts have been groping also. *Compare Rueth v. State,* 100 Idaho 203, 596 P.2d 75 (1979), *with Barton v. State,* 104 Idaho 338, 659 P.2d 92 (1983). Nevertheless, today's decision in this case brings the law relating to the regulation and limitation of access to public streets more in line with the cases dealing with zoning and other types of police power regulation and limitation of the use of property.

BISTLINE, Justice, dissenting.

This case, probably one of the factually least complex cases that a court might enjoy having before it, should have been (1) disposed of by an immediate dismissal of an attempted appeal from an unappealable order denying a motion for summary judgment, or (2) a summary affirmance of the trial court's decision that the State could not "take" away a property right without being required to pay just compensation, to be determined by a jury. Instead, it has remained in this Court for over two years, during which period of time a 3–2 majority

opinion issued which turned *well established* condemnation law topsy turvy and rendered it virtually worthless, but did not declare it overruled. That is one wrong. The other is the wrong done to Ellis Merritt, the owner of a commercial lot in downtown Caldwell. Inasmuch as Shepard, C.J. and I were both in the dissent, some one in the majority, and our Court minutes will reflect who it was, believed that a rehearing should be had, and so voted. It was a noble thought, but little has come of it, other than that three weeks ago the United States Supreme Court handed down its decision in *First Evangelical Lutheran Church of Glendale v. County of Los Angeles.* The majority opinion is now left exactly as it was last October, other than for adding today's statement that "The Court has considered (that case) and finds it to be factually distinguishable as to the extent of the denial of the use of property." If the Court as a whole considered the case and studied its content, I am unaware of the time and place. I would not say that the three justices in the majority did not themselves do so, but it would have been a pleasure to have sat with them as they did so.

The only other product of a second review of the case is that Bakes, J., has written a specially concurring opinion which favors us with his own views on government "regulation" which is not a "taking" as in "condemnation."

Bakes, J., mentions three cases in which the government, under its police powers, can limit the use of real property and yet not be a "taking" as under the government's condemnation power.

It is especially of interest to me that Bakes, J., writes that police power regulation "implicates the provisions of the fifth and fourteenth amendments to the United States Constitution, and art. 1 § 13 of the Idaho Constitution, which prohibit government[s] from taking property without due process and payment of just compensation." Until my reading of that statement, I had labored under the belief that the two governmental powers are separate and distinct; the government must proceed under

one or the other, although it may not be obliged to declare which of the two powers it proceeds under. A power to condemn is a power to condemn. A police power is a police power. A problem arises when a government's action purportedly is so arbitrary that it exceeds the bounds of police power, and it becomes the obligation of the courts to assess the substance of the activity, and place it in the proper category.

Of all the Court's membership, other than Shepard, C.J. and myself, I would have thought until this Merritt case that Bakes, J. would have been the more knowledgeable in the area of condemnation by reason of his own practical experience. Experience is a good teacher.

His views are especially interesting too, where he informs us that the Supreme Court of the United States has been unsuccessful in coming up with a meaningful standard setting the limits as to how far police power can be overused before it is beyond proper limits. He tells us that state courts, lacking guidance from the High Court, are also "groping" with the same problem with which the High Court is "struggling."

He apparently places this Court in the "groping" grouping, as evidenced by the citation to the *Rueth* case, which he indicates should be compared with the *Barton* case. Following those introductory remarks, his opinion concludes with the remark that the majority opinion, "brings the law relating to the regulation and limitation of access to public streets more in line with the cases dealing with zoning and other types of police power regulation and limitation of the use of property."

The validity of that final sentence is beyond question. What is important, and remains unsaid, is WHY three members of the Court are undoing unquestioned long-standing case law precedent, which has been absolutely to the contrary.

Until today I had not realized that Idaho was groping for a standard detailing when an exercise of arbitrary police power is so outrageous and confiscatory that it is beyond constitutional limits.

I am indebted for having my attention brought to the *Barton* case, and on reading the opinion of that case, and wanting to know more, I have examined the record and briefs. It is the contract action which the opinion for the Court says that it is, and, although it will be studied further, I presently see nothing in it which has any bearing on the instant case. In due course, and time permitting, it appears to be a decision worthy of a law review article. I add also that I see nothing in the *Rueth* cases, opinion on appeal after the first trial, and opinion on appeal after the second trial, which offers support for the proposition that this Court has been groping in the area of condemnation law. Mention is also made that in the first opinion, the majority consisted of Justices Bakes, Bistline and McFadden, and it was in that opinion that the case law of condemnation was reviewed and judicially codified, much as this Court did in *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979), and in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), in that area of the law dealing with motions for judgment n.o.v. and alternately for new trials. Justices Donaldson and Shepard did not join in the majority because of their belief that there had occurred no reversible error; neither expressed any disapproval of the thorough review of the principles of condemnation and inverse condemnation.

Brief comment on the United States Supreme Court opinion of June 9, 1987 is in order. That opinion does cut strongly against the majority view. The issue there was very precise, and as stated in the high court's syllabus, dealt specifically with a purported "regulatory" taking:

In 1957, appellant church purchased land on which it operated a campground, known as "Lutherglen," as a retreat center and a recreational area for handicapped children. The land is located in a canyon along the banks of a creek that is the natural drainage channel for a watershed area. In 1978, a flood destroyed Lutherglen's buildings. In response to the flood, appellee *Los Angeles County, in 1979, adopted an interim ordinance prohibiting the construction or reconstruction of any building or structure*

*in an interim flood protection area that included the land on which Lutherglen had stood.* Shortly after the ordinance was adopted, appellant filed suit in a California trial court, alleging, inter alia, that the ordinance denied appellant all use of Lutherglen, and seeking to recover damages in inverse condemnation for such loss of use. The trial court granted a motion to strike the allegation, basing its ruling on *Agins v. Triburon,* 24 Cal.3d 266 [157 Cal.Rptr. 372], 598 P.2d 25 (aff'd on other grounds, 447 U.S. 255 [100 S.Ct. 2138, 65 L.Ed.2d 106]), in which *the California Supreme Court held that a landowner may not maintain an inverse condemnation suit based upon a "regulatory" taking,* and that compensation is not required until the challenged regulation or ordinance has been held excessive in an action for declaratory relief or a writ of mandamus and the government has nevertheless decided to continue the regulation in effect. Because appellant alleged a regulatory taking and sought only damages, the trial court deemed the allegation that the ordinance denied all use of Lutherglen to be irrelevant. The California Court of Appeal affirmed. (Emphasis added.)

The court's holding is concisely set forth in the second syllabus:

Under the *Just Compensation Clause,* where the government has "taken" property by a land-use regulation, the landowner may recover damages for the time before it is finally determined that the regulation constitutes a "taking" of his property. The Clause *is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.* A landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the constitutional provision with respect to compensation. *While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the doctrine of inverse condemnation is predicated on the proposition*

*that a taking may occur without such formal proceedings. "Temporary" regulatory takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings for which the Constitution clearly requires compensation.* Once a court determines that a taking has occurred, the government retains the whole range of options already available— amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain. But *where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective.* Invalidation of the ordinance without payment of fair value for the use of the property during such period would be a constitutionally insufficient remedy. 107 S.Ct. at 2385–89. (Emphasis added.)

On page 2385 of 107 S.Ct., the court explains:

Consideration of the compensation question must begin with direct reference to the language of the Fifth Amendment, which provides in relevant part that "private property [shall not] be taken for public use, without just compensation." As its language indicates, and as the Court has frequently noted, *this provision does not prohibit the taking of private property, but instead places a condition on the exercise of the power.* See *Williamson County,* 473 U.S. at [173] [105 S.Ct. at 3110]; *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U.S. 264, 297, n. 40 [101 S.Ct. 2352, 2371, n. 40, 69 L.Ed.2d 1] (1981); *Hurley v. Kincaid,* 285 U.S. 95, 104 [52 S.Ct. 267, 269, 76 L.Ed. 637] (1932); *Monongahela Navigation Co. v. United States,* 148 U.S. 312, 336 [13 S.Ct. 622, 630, 37 L.Ed.2d 463] (1893); *United States v. Jones,* 109 U.S. 513, 518 [3 S.Ct. 346, 349, 27 L.Ed. 1015] (1883). *This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference*

with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking. Thus, government action that works a taking of property rights necessarily implicates the "constitutional obligation to pay just compensation." *Armstrong v. United States*, 364 U.S. 40, 49 [80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554] (1960).

We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of " 'the self-executing character of the constitutional provision with respect to compensation....' " *United States v. Clarke*, 445 U.S. 253, 257 [100 S.Ct. 1127, 1130, 63 L.Ed.2d 373] (1980), quoting 6 P. Nichols, Eminent Domain § 25.41 (3d rev. ed. 1972). As noted in Justice Brennan's dissent in *San Diego Gas & Electric Co. [v. City of San Diego]*, 450 U.S. [621] at 654–655 [101 S.Ct. 1287, 1305, 67 L.Ed.2d 551 (1981) ], it has been established at least since *Jacobs v. United States*, 290 U.S. 13 [54 S.Ct. 26, 78 L.Ed. 142] (1933), *that claims for just compensation are grounded in the Constitution itself:*

> "The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. *It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty imposed by the Amendment.* The suits were thus founded upon the Constitution of the United States." Id., at 16 [54 S.Ct. at 27].

Jacobs, moreover, does not stand alone, for the Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution. See e.g. *Kir-*by Forest Industries, Inc. v. United States*, 467 U.S. 1, 5 [104 S.Ct. 2187, 2191, 81 L.Ed.2d 1] (1984); *United States v. Causby*, 328 U.S. 256, 267 [66 S.Ct. 1062, 1068, 90 L.Ed. 1206] (1946); *Seaboard Air Line R. Co. v. United States*, 261 U.S. 299, 304–306 [43 S.Ct. 354, 355–356, 67 L.Ed. 664] (1923); *Monongahela Navigation*, supra, [148 U.S.] at 327 [13 S.Ct. at 626].

It has also been established doctrine at least since Justice Holmes' opinion for the Court in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 [43 S.Ct. 158, 67 L.Ed. 322] (1922), that "[t]he general rule at least is, *that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.*" Id., at 415 [43 S.Ct. at 160]. While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings..... (Emphasis added.)

Much, in fact most, of those statements by the High Court are in all respects the same as made by earlier Idaho courts beginning with *Renninger*, and which were reviewed in the first *Rueth* appeal, and specifically quoted from in the first rounds of dissenting opinions in this case.

It goes without saying that the State here can claim that its impairment of access is not for all time—not for "perpetuity," the Court's phraseology in the *Barton* case. True, there the landowner's property was in part being condemned, and she agreed to a settlement for a certain amount, plus a promise of continued access. The State later changed the highway and destroyed that access—absent payment of any compensation for doing so. It was resolved, wrongly I believe, as a contract matter, *i.e.*, the bargained-for easement did not have a time limitation. Until I read that case I would have thought that an agreement for an easement, unspecified as to time, would continue indefinitely— whether the agreement was between two

ordinary people, or as those between an ordinary person and the State of Idaho. The easement or contract rights relating to real property can be mutually cancelled, or the state can retrieve it by paying just compensation in an eminant domain proceeding.

The *Lutheran Church* case makes it clear that the government has to pay compensation for a complete taking of property by a regulatory ordinance, and for the whole duration thereof. It also makes clear that the government can withdraw its ordinance. Such a taking compares very nicely to a total temporary disability in workmen's compensation law—which is compensable, and to a partial permanent disability—which is equally compensable.

The High Court has never held, as I fear my brethren so choose to believe, that compensation is not due for a partial permanent taking. In other words, an impairment of access.

Returning to my earlier comment that Bakes, J. is well aware of such impairments—he and I have sat at opposing counsel tables in federal condemnation proceedings whereat he represented the government. The situs was in North Idaho, and the taking arose out of regulatory action by the Corps of Army Engineers. The Corps desired to regulate the outflow of Lake Pend O'Reille, which pours into the Columbia River. The project was designed to ease spring flooding at Vantage, and other places on the Columbia. To do this the Corps built the Albeni Falls Dam, and regulated the release of waters, and in doing so intermittently impounded waters over and above privately-owned property. In few cases was there an outright fee taking. In all cases the government recognized its obligation to respond in condemnation damages for impairment of property rights of private owners. Usually the Corps water courses over the easement area six to eight months per year.

The majority, simply put, is overly careless in mixing police power concepts, which are replete with vagaries, and the powers of eminent domain, which were specifically addressed at length by the Idaho Constitutional Convention, and became embodied in art. 1 § 14 of the Constitution. On the other hand, there is no such police power article in our Idaho Constitution, nor is that term given any mention in the index to the Proceedings of the Constitutional Convention. Nor do I find police power mentioned in the two volumes which report the proceedings of the Convention.

It is rather evident that the Constitutional Convention was of the view that the taking of private property would be governed under the limitations of paying just compensation therefore, and there was not in any delegate's mind the concept of an individual's property being appropriated in full or impaired and diminished in value on a theory of police power to do so. A reading of the Proceedings makes it clear indeed that some present were against providing in the slightest for any taking of private property.

The concept of police power itself in those words, although in the states it flows from the tenth amendment to the United States Constitution, does not appear in the report of these proceedings.

Government police power, whether it be regulatory or zoning, cannot be used to supplant a specific recognized constitutional provision. Art. 11, dealing with corporations, did mention police power in § 8: "... the police powers of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well being of the state." And that is the extent of it. There was no discussion of that section by the Convention. Short years ago then, those who put together our Constitution, not even knowing of the extent to which "police power" would be pushed and overextended, protected private property rights with the provisions of art. 1 § 14. Today, of all strange happenings, those sworn to uphold the Constitution are tearing it asunder in the name of police power—a terminology which is entirely acceptable only when properly applied.

The Court's opinion authorizing the State to impair the access to the Merritt property

without payment may stand as this Court's commemorative contribution to the bicentennial of the United States Constitution and the nigh Centennial of the Idaho Constitution.