# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50840

BEAR CREST LIMITED LLC, an
Idaho limited liability company;
YELLOWSTONE BEAR WORLD
INC., an Idaho corporation; and
MICHAEL D. FERGUSON, an Idaho
resident,

    Plaintiffs-Appellants,

v.

STATE OF IDAHO acting by and
through the IDAHO
TRANSPORTATION DEPARTMENT,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2025 Term

Opinion Filed: September 3, 2025

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Joel E. Tingey, Senior District Judge.

The district court's order granting summary judgment is <u>reversed</u> in part, judgment is <u>vacated</u>, and the case is <u>remanded</u> for further proceedings consistent with this opinion.

Holden Kidwell Hahn & Crapo, PLLC, Idaho Falls; Fabian VanCott, Salt Lake City, for Appellants. Scott M. Lilja argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Gary D. Luke argued.

_____

BEVAN, Chief Justice.

This appeal concerns the Idaho Transportation Department's (ITD) decision to close an intersection on Highway 20. Yellowstone Bear World Inc., Bear Crest Limited LLC, and Michael Ferguson (collectively "Appellants") are associated with a drive-through wildlife park known as Yellowstone Bear World ("Bear World"), a tourist attraction in Madison County near the intersection of County Road 4300 and Highway 20. In 2016, as part of ITD's expansion plan to turn Highway 20 into a controlled-access highway, ITD closed the intersection closest to Bear

1

World. As a result, Bear World must now be accessed from the Thornton Interchange, which is located about one and a half miles north of the closed intersection. The closure of the intersection means visitors must drive approximately five additional miles on county roads to visit Bear World. Appellants brought claims against ITD for breach of contract and inverse condemnation. Both the Appellants and ITD moved for summary judgment. The district court granted ITD's motion for summary judgment and dismissed Appellants' complaint. This appeal followed. For the reasons below, we reverse the district court's decision, vacate its judgment, direct entry of partial summary judgment in Bear Crest Limited's favor as to breach of contract and inverse condemnation, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Appellants in this case are associated with Bear World, a tourist destination animal attraction located near the intersection of County Road 4300 and Highway 20 in Madison County, Idaho. Michael Ferguson is the owner and manager of Bear Crest Limited LLC ("Bear Crest"), and the owner, director, and registered agent of Yellowstone Bear World Inc. Bear Crest owns nine parcels of real property and leases them to Yellowstone Bear World Inc. Yellowstone Bear World Inc. is an Idaho corporation that owns no real property. Ferguson owns one parcel of land in the vicinity which he bought in 2001.

In the early 1970s, Ross and Lisa Gideon owned about 146 acres in Madison County, some of which abutted Highway 20. In 1973, ITD acquired around seven acres of the Gideons' property as part of a project to expand and improve Highway 20.[1] The Gideons conveyed this acreage in fee simple to ITD, agreeing to limit the uses of their remaining property in certain ways, and transferring to ITD certain rights of access to Highway 20 from their remaining property, while reserving certain rights, as follows:

> TOGETHER with all rights of access between the right of way of the said project and the remaining contiguous property belonging to Grantors, except for: Access to the County Road Connection.

Critical to this appeal is the meaning of the language expressly reserving "Access to the County Road Connection."

---

[1] The project was initiated by ITD's predecessor, the State Department of Highways.

ITD also acquired property from other landowners in proximity to the Gideon property, including the Nelsons and the Allreds. In 1998, Bear Crest purchased the remaining portion of the original Nelson property that was not sold to ITD in 1974 and leased that land to Yellowstone Bear World Inc. for operating Bear World. In 2004, Bear Crest acquired 1.5 acres of the Gideons' remaining property. In 2010, Bear Crest acquired another 26 acres of the Gideons' property. All these parcels are contiguous. From 1998 to 2016, Bear World was immediately accessible from Highway 20. A visitor simply turned from Highway 20 directly onto County Road 4300 and arrived at the park. A map of Appellants' property with a chart showing the various ownership interests over time is included below.



| 1 – Bear Crest Limited LLC | 6 – Bear Crest Limited LLC |
|---|---|
| 1973 property owners: Nelson family | 1973 property owners: Allred family |
| 2 – Bear Crest Limited LLC | 7 – Bear Crest Limited LLC |
| 1973 property owners: Nelson family | 1973 property owners: Allred family |
| 3 – Bear Crest Limited LLC | 8 – Bear Crest Limited LLC |
| 1973 property owners: Allred family | 1973 property owners: Nelson family |
| 4 – Bear Crest Limited LLC | 9 – Bear Crest Limited LLC |
| 1973 property owners: Gideon family | 1973 property owners: Gideon family |
| 5 – Bear Crest Limited LLC | 10 – Michael D. Ferguson |
| 1973 property owners: Gideon family | 1973 property owners: Nelson family |

3

Beginning in 2005, ITD began reconstructing Highway 20 as part of a plan to make it a controlled-access facility. A "[c]ontrolled-access facility" is a "highway especially designed for through traffic to which owners or occupants of abutting land have no right or easement or only a controlled right or easement of access by reason of the fact that their property abuts upon the controlled-access facility." I.C. § 40-104(9). Prior to 2005, Highway 20 contained many "at-grade intersections." An at-grade intersection is one in which traffic meets and crosses without an overpass structure to separate traffic into different levels. County Road 4300 crossed Highway 20 with an at-grade intersection.

In contrast, controlled-access highways contain very few (if any) at-grade intersections. On a controlled-access highway, vehicles may not turn across lanes of oncoming traffic and must enter or exit the highway through an interchange. Controlled-access highways improve safety, reduce vehicle collisions, and allow for increased speed limits.

Ultimately, in 2016, ITD closed the intersection of County Road 4300 and Highway 20, where Bear World is located. Consequently, Bear World visitors must now exit Highway 20 via an overpass at the Thornton Interchange located about 1.5 miles north of the eliminated intersection of County Road 4300 and Highway 20. From there, visitors may access Bear World in two ways: either by (1) County Road 4300 or (2) Bear World Road—both of which are county roads under the control of and maintained by Madison County. Of note, Bear World Road was not completed until 2019. When the intersection was closed, the only access to Bear World was from County Road 4300. A visitor driving south who misses the Thornton Interchange must continue south for about three miles, pass Bear World, exit Highway 20, re-enter and drive about three miles north, and exit at the Thornton Interchange.

After closure of the intersection at County Road 4300 and Highway 20, the Appellants sued the State of Idaho (acting through ITD) and brought two distinct claims. First, Appellants alleged that ITD's actions constituted an inverse condemnation. Appellants argued that they owned an easement or contractual right to the intersection of County Road 4300 and Highway 20 that had been taken without just compensation. Appellants relied on three alternative theories to support their claims: (1) ITD's actions were a direct taking of Bear Crest's property interests in the access reserved in the Gideon deed. *See Day v. Transportation Dep't*, 166 Idaho 293, 301-302, 458 P.3d 162, 170-71 (2020); (2) ITD's closure of the intersection near the Bear Crest property amounted to a taking of property that was dedicated to the public trust as an access easement. *See Killinger*

*v. Twin Falls Highway Dist.*, 135 Idaho 322, 327, 17 P.3d 266, 271 (2000); and (3) ITD's actions "destroyed or substantially impaired" the right of access to Highway 20 that Appellants held as abutting landowners. *See State, Idaho Transp. Bd. v. HI Boise, LLC*, 153 Idaho 334, 338, 282 P.3d 595, 599 (2012).

Second, Appellants brought a breach of contract claim, also based on *Day*, arising out of the language of the Gideon deed, which reserved to the Grantors "Access to the County Road Connection."

Various pretrial motions were made. ITD moved for summary judgment on the grounds that Appellants lacked standing, that property owners are not entitled to their preferred traffic pattern for access to their property, and that altering highway access is a valid exercise of the State's police power and not a taking. ITD also moved to bifurcate the trial, strike Appellants' evidence, and limit the scope of the inverse condemnation claim. Appellants likewise moved for partial summary judgment on their breach of contract claim, while concurrently defending against ITD's motion for summary judgment.

As to their motion for summary judgment on the breach of contract claim, Appellants argued that ITD contracted with the Gideons when it purchased the Right of Way to widen Highway 20 in 1973. Pursuant to the contract, the Gideons conveyed to ITD their property abutting Highway 20,

> TOGETHER with all rights of access between the right of way of the said project [to expand and upgrade Highway 20] and the remaining contiguous real property belonging to the Grantors, except for: *Access to the County Road Connection*.

(Emphasis added). Appellants argued this "expressly reserved a right of access to Highway 20 via the county road . . . ." They also argued, citing *Day*, that the access right reserved to the grantors is an appurtenance that runs with the land. 166 Idaho at 302, 458 P.3d at 171. Thus, as subsequent purchasers of the Gideons' interest, and lessors of that interest (Bear World leasing from the other two Appellants), the Appellants could enforce the contractual right contained in the Gideon deed against ITD.

Appellants also argued that the access rights reserved by the Gideons were not limited to the Gideon parcels withheld from the 1973 sale. They argued, "[a]s owner and lessee of the reserved access, Bear Crest and [Yellowstone Bear World Inc.] had the right to use the access in furtherance of their business interests and to access *all* the Bear World Property." (Emphasis added). Therefore, when evaluating damages to the Appellants, "the damages suffered by

5

[Appellants] are not limited to the loss of access to the [remaining Gideon parcels], rather those damages arise from the closure of the access to *all* the Bear World Property." (Emphasis added).

As to the inverse condemnation claim, the Appellants defended against ITD's summary judgment motion by arguing that ITD's conduct constituted a "taking of Bear Crest's access easement or contract right to Highway 20 . . . ." The Appellants asserted the three alternative theories listed above.

The district court granted ITD's motion for summary judgment on both counts. On the breach of contract count, the district court did not address whether the deed itself was a contract. Instead, the court determined, without stating explicitly, that the language of the Gideon deed was clear and unambiguous and that the relevant language "Access to the County Road Connection" did not encompass access to Highway 20 because the deed did not mention a highway, only a County Road. The district court concluded that such "access" simply meant access to *a* county road, which the Appellants continued to have through County Road 4300. Thus, the court determined that extrinsic evidence was inadmissible and limited its review to the deed's plain language. The court concluded the Gideon deed did not preclude the State from eliminating the intersection of County Road 4300 and Highway 20.

On the inverse condemnation claim, the district court again noted that the Gideon deed did not create a contractual right to access Highway 20. Thus, a claim of inverse condemnation based on any contractual right was fruitless. Next, the court held that the public trust argument failed because the Gideon deed preserved access to the County Road for the benefit of the Gideons, not the public in general. The court also ruled that the compensation ITD paid the Gideons in 1973 extended to their successors in interest, the Appellants, thereby precluding their recovery: "Since the Gideons and Nelsons were compensated for any improvements ITD made within the right of way or property acquired by ITD, [Appellants] are precluded from asserting a taking, or claiming additional compensation." The court added that even if the Appellants were not precluded by the compensation paid to the Gideons, the elimination of the intersection did not constitute a taking because the alternative route and additional mileage to reach Bear World from Highway 20 did not constitute a substantial impairment to access.

Having determined that both claims failed, the district court dismissed the complaint. Appellants timely appealed.

## II. ISSUES ON APPEAL

1. Whether Appellants have standing.

2. Whether the district court erred in granting ITD's motion for summary judgment on the breach of contract claim.

3. Whether the district court erred in granting ITD's motion for summary judgment on the inverse condemnation claim.

## III. STANDARD OF REVIEW

When reviewing an order of summary judgment, this court applies the same standard used by the trial court. *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 846, 419 P.3d 1139, 1144 (2018). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing I.R.C.P. 56(a)). "The facts must be liberally construed in favor of the non-moving party." *Groveland Water & Sewer Dist. v. City of Blackfoot*, 169 Idaho 936, 940, 505 P.3d 722, 726 (2022) (quotation marks and citation omitted). If there is no genuine dispute of material fact, this Court exercises free review over the remaining questions of law. *Id.*

## IV. ANALYSIS

### A. At least one Appellant has standing.

ITD contends the Plaintiffs-Appellants lack standing to bring this action. Standing was raised and briefed below but it was not ruled on by the district court. ITD has raised standing in its briefing on appeal. While not addressed by the district court, "[s]tanding is a threshold requirement" and if raised, should be addressed before reaching the merits of a case. *Arakaki v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir. 2002). Thus, we will address it.

Whether a party has standing is jurisdictional and may be raised at any time, including for the first time on appeal. *Campbell v. Parkway Surgery Ctr., LLC*, 158 Idaho 957, 961, 354 P.3d 1172, 1176 (2015). To establish standing, a party "must allege or demonstrate a distinct palpable injury in fact; that the injury is fairly traceable to the challenged conduct; and that there is a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.*

ITD argues that Yellowstone Bear World Inc. and Ferguson lack standing as to the inverse condemnation claim because they did not hold property interests implicated by the initial complaint. Specifically, ITD alleges that Yellowstone Bear World Inc. lacks standing because it owns no real property. Similarly, ITD argues Ferguson lacks standing because he owns just one

7

parcel that has no deed-related access rights. Finally, ITD argues that Bear Crest lacks standing for the six parcels that do not have deed-related access rights, or those properties that do not have the Gideon deed in their chain of title.

On the contract claim, ITD argues that Yellowstone Bear World Inc. lacks standing because it owns no real property "so there is no contract or privity—therefore, the Gideon deed has no applicability." Ferguson allegedly lacks standing because the Gideon deed is not in the chain of title for the land he owns, therefore there is no contract or privity. And finally, Bear Crest might have standing for the Gideon parcels, but not the others.

We hold that Bear Crest has standing because the Gideon deed gives rise to a contractual obligation that runs with the land. *See Day*, 166 Idaho at 302, 458 P.3d at 171. The Gideon deed transferred approximately 7 acres of land to ITD with the reservation for access to the county road connection. The property from which the access easement was taken is now owned by Bear Crest and leased to Yellowstone Bear World Inc. and is contiguous to the other affected properties. Bear Crest, as the Gideons' successor in interest, has standing to pursue the breach of contract claim. *See Coward v. Hadley*, 150 Idaho 282, 287, 246 P.3d 391, 396 (2010).

We likewise hold that Bear Crest has standing on the inverse condemnation claim by virtue of its status as a property owner. *See Day*, 166 Idaho at 298, 458 P.3d at 167. Because at least one appellant has standing, we may consider this appeal. *See Massachusetts v. Env't Prot. Agency*, 549 U.S. 497, 518 (2007) ("Only one of the petitioners needs to have standing to permit us to consider the petition for review."); *see also Farrell v. Bd. of Comm'rs, Lemhi Cnty*., 138 Idaho 378, 383, 64 P.3d 304, 309 (2002) (that all appellants may not have standing as to all issues is of no consequence if at least one appellant has standing for each issue argued), *overruled on other grounds by City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012).

All three appellants assert the same arguments as to the merits, and we will address those arguments. This is not to say that Ferguson and Bear World Inc. have grounds to pursue each cause of action or that they may ultimately recover damages on remand, as we set forth below. This is simply an initial determination that since Bear Crest has standing, the Court will address the issues presented. Because we make only this initial determination of standing, the following analysis concerns only the rights possessed by Bear Crest. The claims of Yellowstone Bear World Inc. and Ferguson will need to be addressed by the district court on remand in light of this opinion.

8

**B.** **The district court erred when it granted ITD's motion for summary judgment on the breach of contract claim because the Gideon deed unambiguously refers to the County Road/Highway 20 connection built by ITD in 1973.**

Bear Crest makes several arguments in support of its contention that the district court erred in dismissing its breach of contract claim. Primary among them, and the argument we find compelling, is that the district court did not conclude that the Gideon deed is unambiguous but simply treated it as such and "ignore[ed] the plain language of the contract [in] concluding that the reserved 'Access to the County Road Connection' only required access to *a* county road. By misinterpreting Access to the County Road Connection" as it did, the district court simply concluded that since Bear Crest has access to *a* county road, it has no claim for breach of contract. Bear Crest maintains that "Access to the County Road Connection" "should be interpreted to mean the Bear World Access—the at-grade intersection of Highway 20 and County Road 4300 constructed by ITD on the property acquired under the Gideon [d]eed." ITD, on the other hand, argues that the district court got it right, and the Appellants therefore have no claim for breach of contract. For the reasons below, we hold that the deed can be enforced as a contract.

A typical real estate transaction begins with buyer and seller entering into a written contract of sale, setting forth the purchase price, contingencies, and closing date. At closing, the buyer tenders the purchase funds, and the seller delivers a properly executed deed, officially conveying the property interest. It is hornbook law that "[w]hen a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed." *Jolley v. Idaho Secs., Inc.*, 90 Idaho 373, 382, 414 P.2d 879, 884 (1966). As a consequence of this merger, "the deed alone . . . determine[s] the rights of the parties," even if the deed terms "vary from those contained in the contract." *Id.* Put differently, the four corners of the deed govern the conveyance. The deed generally subsumes and extinguishes any covenants or promises in the contract of sale. Restatement (Fourth) of Property § 3, Introductory Note (Am. L. Inst. 2024).

The merger doctrine is a fundamental principle of real property law. *See Jolley*, 90 Idaho at 382, 414 P.2d at 884. While it is "universally accepted," the merger doctrine "is only the starting point, inasmuch as the exceptions to the rule are at least as important as the rule itself." 9 THOMPSON ON REAL PROPERTY, THIRD THOMAS EDITION § 82.13(d) (David A. Thomas ed., 2011).

*Day v. Transportation Dep't*, 166 Idaho 293, 301-302, 458 P.3d 162, 170-71 (2020), is instructive to these principles. *Day* involved an action by property owners against ITD to recover for inverse condemnation and breach of contract. In *Day*, the landowners conveyed nine acres of

9

real property to the State for construction of an interstate highway. *Id.* at 296, 458 P.3d at 165. In exchange, the State provided "a lump sum payment and the promise that" Appellants would have access to their remaining property from a "future frontage road and stock drive." *Id.* The parties documented this agreement in a Right of Way Contract, and the landowners subsequently "conveyed the right of way by warranty deed which referenced the future frontage road." *Id.* The question in *Day* was whether the reserved easement in the Right of Way Contract was enforceable as a contract post-merger; that is, after the landowners delivered and the Department accepted the warranty deed conveying the right of way.

The Court held the landowners could enforce the covenant in the Right of Way Contract reserving "access to the Future Frontage Road and Stock Drives" in a breach of contract action. Looking to the substance of both the Right of Way Contract and the deed, the Court reasoned the warranty deed's reference to the future frontage road was enough to "manifest[] a clear merger of the terms of the 1967 Contract into the deed." *Id.* at 302, 458 P.3d 171. In other words, because the landowners' reservation of a right of way was within the four corners of the deed, their right of access was enforceable by dint of the deed instrument, not the Right of Way Contract. *See id.* As successors in interest to the original dominant estate holders, the landowners could bring a breach of contract action to enforce the appurtenant easement referenced in the deed. *Id.* ("[T]he various succeeding deeds conveying the Day property all contained language transferring 'hereditaments' or 'appurtenances[.]' The reservation of the right of access was such an appurtenance.").

In *Day*, we recognized several principles that are at play here:

1. Contractual obligations as set forth in a deed run with the land. 166 Idaho at 302, 458 P.3d at 171. Thus, subsequent purchasers can enforce such promises in a breach of contract action. *Id.*

2. Any substantive terms such as title, possession, and parcel size from the underlying contract transferring real property (such as the Right of Way Contract here) are merged into the deed conveying the property. *Id.*

3. Such a deed becomes the operative agreement between the parties. *Id.* (citing *Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 382, 414 P.2d 879, 884 (1966) ("When a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained

10

in the contract, *the deed alone must be looked to to determine the rights of the parties*.") (Emphasis added). The terms of the deed control.

4. The deed determines the rights of the parties. *Id.*

5. Promises contained in a deed executed as part of a contract for purchase of land may give "rise to [a] contract claim." *Id.*

Notably, the *Day* Court also announced what is best described as a corollary to the merger doctrine rather than an exception: where, as here, a covenant in the deed instrument manifested a clear merger of the terms of the underlying contract of sale, that covenant may be enforced in a breach of contract action arising from the *deed*:

> In this case, consistent with the 1967 Contract, the warranty deed transferring the land for the construction of I-80N expressly reserved for the benefit of the grantors "access to the Future Frontage Road and Stock Drives on the Southwesterly side" of the freeway. *This covenant in the deed manifested a clear merger of the terms of the 1967 Contract into the deed.* As previously noted, the various succeeding deeds conveying the Day property all contained language transferring "hereditaments" or "appurtenances" The reservation of the right of access was such an appurtenance.

*Day*, 166 Idaho at 302, 458 P.3d at 171 (2020) (emphasis added). The Court's analysis in *Day* applies to the instant case.

In the deed at issue, the Gideons conveyed a little over 7 acres of land to the State, much of which ran adjacent to Highway 20. In addition to the land itself, the Gideons, in accordance with the provision of the Right of Way Contract in which ITD was to receive "control of access," also conveyed "all rights of access between the right of way of the said project and the remaining contiguous real property belonging to the Grantors." In other words, the Gideons gave up all access to Highway 20. The only exception was in the form of a reserved easement in the deed: "Access to the County Road Connection." The deed also contained several other promises related to the easement such as the Gideons' promises not to build any structures within 20 feet of the land being conveyed and not placing advertising signs within 660 feet of the land being conveyed. What is more, just as in *Day*, we must look within the four corners of the deed, not the Right of Way contract, to determine the post-merger rights of the parties. As such, like in *Day*, Bear Crest has a cognizable breach of contract claim based on that covenant in the Gideon deed.

Commentators have noted that the modern-day deed is more like an "arm length business transaction than an inter-family gratuitous transfer." 9 THOMPSON ON REAL PROPERTY, THIRD

11

THOMAS EDITION § 82.13(e) (David A. Thomas ed., 2011). As such, construction of deeds has "mirrored the process" used to interpret contracts. *Id.* For example, as analogous to the parol evidence rule, extrinsic evidence is irrelevant when interpreting the language of an unambiguous deed. *See Camp Easton Forever, Inc. v. Inland Nw. Council Boy Scouts of Am.*, 156 Idaho 893, 900, 332 P.3d 805, 812 (2014); *see also Frost v. Gilbert*, 169 Idaho 250, 264, 494 P.3d 798, 812 (2021); *Caballo Coal Co. v. Fid. Expl. & Prod. Co.*, 84 P.3d 311, 314–15 (Wyo. 2004). Additionally, modern cases discussing the merger doctrine and whether agreements are collateral to the conveyance "bear similarity to the classic contract issue of 'integration' and the parol evidence rule." 9 THOMPSON, *supra*, § 82.13(e); *see also McOmber v. Thompson*, No. 50980, 2025 WL 2046076, at *13 (Idaho July 22, 2025). "While some courts still refer to the 'merger' rule in property terms, more and more are the decisions relating to merger beginning to take on the appearance of a contracts case." 9 THOMPSON, *supra*, § 82.13(e). In other words, the deed represents "full performance of the contract to convey" and is the "final *agreement*" between the parties. 9 THOMPSON, *supra*, § 82.13(d) (emphasis added); *see also Bixler v. Oro Mgmt., L.L.C.*, 86 P.3d 843, 848 (Wyo. 2004).

From these principles, including our holding in *Day*, we conclude that a deed may form the basis for a breach of contract claim. Accordingly, the district court erred in granting summary judgment against Bear Crest on its breach of contract claim.

Next, we review the language of the deed, in the same way that we review any other contract. As we recently recognized, when interpreting the language of a contract,

> this Court begins with the document's language. The first step is to determine whether or not there is an ambiguity in the contract's plain language. A contract is ambiguous if it is reasonably subject to conflicting interpretations. Determining whether a contract is ambiguous is a question of law over which this Court exercises free review. If the Court finds no ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument. Interpretation of an unambiguous contract is a question of law and reviewed *de novo*.

*Sunnyside Park Utilities, Inc. v. Sorrells*, ___ Idaho ___, ___, 568 P.3d 820, 830 (2025) (citations omitted).

When interpreting a contract, a court's primary objective "is to discover the mutual intent of the parties at the time they entered the contract." *Hap Taylor & Sons, Inc. v. Summerwind Partners, LLC*, 157 Idaho 600, 610, 338 P.3d 1204, 1214 (2014). If the terms of the contract are

unambiguous, intent can be ascertained as a matter of law by looking within the four corners of the document. *Id*.

> If the provisions of a contract are ambiguous, the interpretation of those provisions is a question of fact which focuses upon the intent of the parties. The determination of the parties' intent is to be determined by looking at the contract as a whole, the language used in the document, the circumstances under which it was made, the objective and purpose of the particular provision, and any construction placed upon it by the contracting parties as shown by their conduct or dealings.

*J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 614, 167 P.3d 748, 751 (2006) (citation omitted).

Based on this standard, reviewing the deed as a whole, we determine that the reservation in the deed is clear on its face, but unlike the district court, we conclude that the deed references an express reservation of access to the Highway 20 *connection* to the county road, not to the county road itself.

When the Gideons conveyed the seven acres to ITD's predecessor, they also conveyed all rights of access they had to Highway 20 except for "Access to the County Road Connection":

> TOGETHER with all rights of access between the right of way of the said project [to expand and upgrade Highway 20] and the remaining contiguous real property belonging to the Grantors, except for: *Access to the County Road Connection*.

"Access to *the* County Road *Connection*" is different than "access to a county road." Use of the word "the" and capitalization of the phrase "County Road Connection" within the same sentence signifies that the parties were referring to something specific, rather than simply *a* county road. What was the county road connected to? It was connected to Highway 20. The Gideons transferred "all rights of access between the right of way of the said *project* . . ." other than what they reserved. (Emphasis added). The "project," from the start, was the expansion of Highway 20. Thus, the Gideons gave up all rights of access to Highway 20, other than through the "County Road Connection." Again, this "connection" was built on part of the land ITD purchased from Gideons in 1973, and the reserved connection clearly applies to the physical road structure between County Road 4300 and Highway 20. Moreover, the legal description in the Gideon deed states that ITD acquired land "344.0 feet to a point in the Easterly right of way line *of an existing North-South County Road*." Thus, the County Road Connection refers to the small strip of road between Highway 20 and County Road 4300 that ITD constructed on land acquired from the Gideons.

The Gideons' reservation of access would be meaningless if it simply reserved access to County Road 4300 from their remaining property. They already had that. What they reserved was access to the soon-to-be constructed spur joining County Road 4300 with Highway 20 so that the

Gideons could continue to access the highway at that location. As the district court noted, County Road 4300 and now Bear World Road are both owned and operated by Madison County. The County could, in theory, eliminate access to those roads. But the Gideon deed is a contract between the Gideons and the *State* Transportation Department. Therefore, the language must be interpreted with consideration of the rights being bargained for between the parties. ITD acquired all access rights to the land conveyed by the Gideons but allowed the Gideons to reserve access to "the County Road Connection." Thus, the connection referred to must be controlled by ITD, not the County. It follows then that reserving access to the County Road Connection did more than reserve access to an existing county road.

ITD's argument that the deed does not mention the word "highway" or "intersection" does not change this result. While the deed does not use "highway" in isolation, and it doesn't reference "intersection" at all, it does more than reserve access to an existing county road. Further, ITD's argument that County Road 4300 connects with Highway 20 at the Thornton Interchange, and that is "a county road connection," contradicts the plain language of the deed. As discussed, the deed reserved access to *the* connection—not to *a* connection. The Thornton Interchange was built in 2016. The Gideons and ITD certainly did not contemplate that interchange, built over forty years after they signed the warranty deed, as the connection referenced in the deed. To the parties who executed the deed, *the* connection could only have been the then-newly constructed spur between Highway 20 and County Road 4300.

ITD maintains that the district court's decision should be affirmed because the Gideon deed does not refer to Highway 20, or to any highway at all. But the deed, including Exhibit A thereto, specifically references "U.S. Highway . . . 20," and "Project No. F-6471(40)" more than once.

Express easements may be created by a deed conveying property. *Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012). "An express easement by reservation reserves to the grantor some new right in the property being conveyed; an express easement by exception operates by withholding title to a portion of the conveyed property." *Id.* (quotation marks and citation omitted). "[E]xpress easements are presumed to be appurtenant" and run with the land. *See Coward*, 150 Idaho at 287, 246 P.3d at 396 (2010); *see also* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 5.2 (AM. L. INST. 2000) ("[A]n appurtenant benefit or burden runs to all subsequent owners and possessors of the benefited and burdened property[.]").The express reservation of access rights contained in the Gideon deed constitutes an easement that runs with

14

the land to its present owner, Bear Crest. *See Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 550, 808 P.2d 1289, 1295 (1991). Bear Crest may enforce the easement against ITD through a breach of contract action. *See Day*, 166 Idaho at 302, 458 P.3d at 171.

Accordingly, Appellants' motion for partial summary judgment should have been granted. First, it should have been granted as to the contract claim. A contract exists: the Gideon deed. The connection referred to in the Gideon deed was built by ITD on land purchased from the Gideons. Bear Crest has no access to the County Road Connection because the Connection has been destroyed.

Second, the contract has been breached. Neither party disputes that access to the highway via the spur has been destroyed. Thus, we conclude there is no genuine issue of material fact on the breach element.

Both parties have raised additional issues on appeal as to the contract claim, which we remand for further consideration. We recognize that we "may give guidance for other issues on remand[,]" but in doing so "we are aware that such guidance should only be given on issues that are absolutely necessary, and regarding issues that have a practical effect on this appeal . . . ." *N. Idaho Bldg. Contractors Ass'n v. City of Hayden*, 164 Idaho 530, 540, 432 P.3d 976, 986 (2018). As to damages, the district court never reached the issues presented because it dismissed the case before getting there. Appellants now maintain that the damages are to be measured by the harm to "[Yellowstone Bear World's] business operations and to the value of Bear Crest's real property held in fee from immediately before to immediately after the closure of the Bear World Access." ITD argues that the Gideon deed is not in the chain of title for seven of the properties owned by Bear Crest and those properties were acquired after Bear World began operating. Therefore, damages should be limited to only the properties with the Gideon deed in the chain of title. And, ITD argues, citing *Easterling v. HAL Pac. Properties, L.P.*, that any access rights granted by the Gideon deed are not retroactive. In other words, access rights created by the Gideon deed extend only to Gideon parcels, not Nelson parcels. 171 Idaho 500, 522 P.3d 1258 (2023)[2].

Having found ITD in breach of its contract as a matter of law, we leave damages to be litigated on remand. We have determined that the Gideon deed reserved to the Gideons and their

---

[2] This opinion, now referenced as *Easterling I*, has been reversed by a recent decision of this Court. *See Easterling v. Clark*, No. 50939, 2025 WL 2396904 (Idaho Aug. 19, 2025).

successors a right of access to the county road connection, and thereby to Highway 20. This access was eliminated by ITD in 2016. That said, questions remain about the scope of the Gideon deed, specifically whether the access right reserved by the deed extends to other parcels previously acquired by Bear Crest, including those without the Gideon deed in the chain of title. We decline to address these issues here and remand for further consideration. We simply hold that reserving access to the "County Road Connection" guaranteed the Gideons and their successors access to the Highway 20 connection built by ITD in 1973. By eliminating that connection, ITD is in breach.

**C.** **The district court erred when it granted ITD's motion for summary judgment on the inverse condemnation claim because eliminating the intersection constituted a taking of Bear Crest's reserved access rights and substantially impaired its access to Highway 20.**

"An inverse condemnation case is a civil action predicated upon our Idaho constitution." *Reisenauer v. State, Dep't of Highways*, 120 Idaho 36, 39, 813 P.2d 375, 378 (Ct. App. 1991).

> A property owner who believes that his or her property, or some interest therein, has been invaded or appropriated to the extent of a taking, but without due process of law and the payment of just compensation, may bring an action for inverse condemnation. The property owner cannot maintain an inverse condemnation action unless there has actually been a taking of his or her property. The determination of whether or not there has been a taking is a matter of law to be resolved by the trial court. Because that determination is a question of law, this Court exercises free review over the trial court's decision on that issue.

*KMST, LLC v. Cnty. of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003) (internal citations omitted). An inverse condemnation action must be: "(1) instituted by a property owner who (2) asserts that his property, or some interest therein, has been invaded or appropriated (3) to the extent of a taking, (4) but without due process of law, and (5) without payment of just compensation." *Covington v. Jefferson Cnty.*, 137 Idaho 777, 780, 53 P.3d 828, 831 (2002). The district court found that no taking had occurred and granted ITD's motion for summary judgment.

Appellants maintain that ITD's closure of the intersection of County Road 4300 and Highway 20 constituted a taking based on three separate legal theories. First, Appellants allege they had a contractual right to access Highway 20 reserved under the Gideon deed. Second, Appellants argue ITD acquired access rights to create an intersection with Highway 20 in 1973. Eliminating the intersection resulted in "a change in the type of use from which the property had originally been set aside [which] amounts to a taking requiring compensation." (quoting *Killinger v. Twin Falls Highway Dist.*, 135 Idaho 322, 327, 17 P.3d 266, 271 (2000)). Finally, Appellants

16

argue that, as abutting landowners, Bear Crest and Ferguson possess the right to access Highway 20. "[A]ccess to an adjacent public way—even in the absence of an expressly deeded right—is one of the incidents of land ownership, the taking of which may require compensation." (quoting *State, Idaho Transp. Bd. v. HI Boise, LLC*, 153 Idaho 334, 338, 282 P.3d 595, 599 (2012)). Appellants maintain that the closure of the intersection substantially impaired their access, requiring compensation. Appellants additionally argue that substantial impairment must be analyzed by diminution in property value caused by the change in access, not by looking at alternative routes, as the district court did.

ITD argues that Idaho Code sections 40-310 and 40-106(9), and this Court's precedent, control and restrict Appellants' access rights to Highway 20. ITD also argues that the Nelson deed, although not discussed below, is noteworthy because Bear World began operation on Nelson's property, not Gideons' property. Thus, "Bear Crest Limited's acquisition of additional properties in 2004 and 2010—the only properties that were ever owned by the Gideon family, provide no retroactive access rights to the other properties, including the only properties upon which Yellowstone Bear World invites tourists to visit." Finally, ITD argues that the district court properly rejected Appellants' claims based on the public trust and their abutting landowner claims.

"A cause of action for inverse condemnation arises at the time of actual interference by the condemnor with the owner's right to use the property." *State ex rel. Symms v. Nelson Sand & Gravel, Inc.*, 93 Idaho 574, 579, 468 P.2d 306, 311 (1970). "The issues of the nature of the property interest alleged to have been taken and whether a taking has occurred are questions of law." *State, Idaho Transp. Bd. v. HI Boise, LLC*, 153 Idaho 334, 337, 282 P.3d 595, 598 (2012). Accordingly, we must focus on what property interests Bear Crest had in 2016, if any, and whether a taking occurred as a matter of law at that time—rather than in 1998 when Bear World opened.

### 1. Reserved access by the Gideon deed

A claim of inverse condemnation may be based on a deed preserving access rights. *Day v. Transportation Dep't*, 166 Idaho 293, 296–300, 458 P.3d 162, 165–169 (2020). Ruling on the Appellants' claims of reserved access, the district court simply stated:

> At first blush, Plaintiffs' inverse condemnation claims appear[] derivative of the alleged breach of contract. As this Court has ruled, Plaintiffs, as successors of Gideons, had no easement or contract right for such access. Accordingly, an inverse condemnation claim based upon an alleged contractual right fails.

17

Given our holding in Section IV. B, the district court's grant of summary judgment to ITD has been reversed, with a directive that partial summary judgment, recognizing a contract cause of action and breach of the same be entered in Bear Crest's favor. Thus, Bear Crest *did* have a contractual right to access the Highway 20 connection. Accordingly, a taking of that interest has occurred as a matter of law.

### 2. *Abutting Landowner Rights*

"[A]ccess to an adjacent public way—even in the absence of an expressly deeded right— is one of the incidents of land ownership, the taking of which may require compensation." *HI Boise, LLC*, 153 Idaho at 338, 282 P.3d at 599. But this right of access is limited. It may be regulated because "it is subservient to the primary rights of the public to the free use of the streets for travel and incidental purposes." *Id.* "[S]tate action that merely results in a change in traffic flow requiring traffic to reach property by a more circuitous route does not amount to a taking as a matter of law." *Id.* at 338–39, 282 P.3d at 599–600. Further, this Court's jurisprudence distinguishes between compensable takings and valid exercises of the police power to regulate access to public streets. *Id.* at 340, 282 P.3d at 601 ("[I]t is only where a previously existing access right is destroyed or at least substantially impaired, leaving no reasonable alternative, that we have recognized a compensable taking of access."); *see also State ex rel. Moore v. Bastian*, 97 Idaho 444, 447, 546 P.2d 399, 402 (1976); *Merritt v. State*, 113 Idaho 142, 145, 742 P.2d 397, 400 (1986).

The district court concluded that no taking had occurred to Bear Crest's abutting landowner rights because it still had access to Highway 20 by a more circuitous but reasonable route:

> [T]he alternative route was not so circuitous as to constitute a substantial impairment to access. All roads were paved and once exiting the Highway at the Thornton Interchange, there was only a single left-hand turn onto 4300 W (from 2016 thru 2019) or a single left-hand turn onto Bear World Road (after 2019). The additional mileage did not constitute a substantial impairment to access.

Appellants argue this conclusion was erroneous. ITD argues that the district court was correct— this was a proper exercise of the State's police power and not compensable. ITD also argues that the right of access to a public road does not encompass access from a particular road. Recognizing the parties' divergent theories, the critical question is whether diverting traffic to the Thornton Interchange *substantially impaired* Bear Crest's access to Highway 20.

In *James v. State By & Through Idaho Bd. of Highway Directors*, the plaintiffs owned Wolf Lodge Inn located in Kootenai County directly off Highway 10. 88 Idaho 172, 174, 397 P.2d 766, 767 (1964). The State of Idaho constructed a new highway, Interstate 90, in conformity with

federal interstate highway regulations. *Id.* A solid fence was constructed between State Highway 10 and the new highway. *Id.* Visitors to the Wolf Lodge Inn were then required to "travel one and a quarter miles off the main highway to get to their premises and must return by the same route to achieve access to the highway . . . ." *Id.* at 174–75, 397 P.2d at 768. The plaintiffs argued that the State had interfered with their business access, constituting a taking. *Id.* at 176, 397 P.2d at 769.

This Court held that no taking had occurred because plaintiffs' access had not changed. *Id.* at 177, 397 P.2d at 769. The Court noted that east bound traffic coming to the lodge had to retrace its path to continue the journey, but "[t]his alone, does not constitute a taking of property. At most it can only be considered as constituting a more inconvenient, or circuitous route." *Id.* at 177, 397 P.2d at 770. The Court concluded that the plaintiffs were not entitled to compensation because they had not shown substantial impairment to their right to access. *Id.* at 179, 397 P.2d at 770.

In *State ex rel. Symms v. Nelson Sand & Gravel, Inc.*, 93 Idaho 574, 468 P.2d 306 (1970), the State constructed an interstate, separating two parcels of land. *Id.* at 579–80, 468 P.2d at 310–11. The defendant, Nelson Sand and Gravel, brought an inverse condemnation claim against the State for the impairment of access between the two tracts of land. *Id.* at 582–83, 468 P.2d at 314–15. This Court noted, "[e]ven though circuity of travel as distinct from a total destruction of access, may not be compensable, [we have] held that substantial impairment of an access which decreases the market value of land remaining after condemnation is compensable." *Id.* at 583, 468 P.2d at 315. Nelson mined gravel and would have to travel about four and a half additional miles to get gravel from the mine of one tract to the plant on the other. *Id.* The Court further noted that "a prospective purchaser would not pay as much for the leasehold or for [part of the formerly undivided land] after the condemnation increased the distance of hauling gravel to the plant as he would have before." *Id.* Thus, a decrease in the market value of the land after access has been substantially impaired is relevant when considering whether a taking has occurred. *See State ex rel. Rich v. Fonburg*, 80 Idaho 269, 279, 328 P.2d 60, 64 (1958) (considering the decrease in value to the land retained by the owner when part of the owner's land was taken in a condemnation proceeding).

In *Fonburg*, the State condemned part of Fonburg's land to construct a new highway and closed the old highway which denied him direct access to the new highway and existing railroad line. *Id.* at 274–75, 328 P.2d at 61–62. The district court dismissed Fonburg's complaint on summary judgment and this Court reversed, noting that the complaint and affidavit showed

substantial impairment of right of access and not mere inconvenience. *Id.* This Court held that Fonburg had a right to present evidence of damages to a jury. *Id.* at 280, 328 P.2d at 65–66.

In *HI Boise, LLC*, the Court distinguished *Nelson Sand & Gravel* and *Fonburg*. 153 Idaho 334, 282 P.3d 595. There, ITD brought a condemnation action to take a strip of land near I-84 and Vista Avenue and HI Boise counterclaimed for inverse condemnation because of lost access and visibility. *Id.* at 335, 282 P.3d at 596. HI Boise alleged that ITD effectively condemned its access to Vista Avenue. *Id.* at 336, 282 P.3d at 597. HI Boise also argued that *Fonburg* controlled. *Id.* at 338, 282 P.3d at 599.

This Court disagreed and pointed out that "the physical taking in [*Fonburg*] *directly caused* the destruction of access rather than incidentally occurring alongside it." *Id.* at 340, 282 P.3d at 601 (emphasis in original). The Court continued, "Our jurisprudence—as demonstrated by *Bastian*, *Brown*, and *Merritt*—dictates that no severance occurs where the court finds as a matter of law that an access right has merely been regulated by an exercise of police power rather than taken by eminent domain." *Id.* The Court also noted that in *Fonburg* and *Nelson Sand & Gravel*, the limitation of access was caused by a physical taking of land by the State. *Id.* at 341, 282 P.3d at 602.

*Bastian* involved the State placing a median in the center lane and installing traffic control devices which prohibited left turns into a grocery store parking lot. *State ex rel. Moore v. Bastian*, 97 Idaho 444, 446, 546 P.2d 399, 401 (1976). *Brown* also involved medians that prevented left turns into the Browns' property. *Brown v. City of Twin Falls*, 124 Idaho 39, 40, 855 P.2d 876, 877 (1993). In *Merritt*, the City of Caldwell restricted Merritt's access to North 10th Avenue to comply with federal highway regulations. *Merritt v. State*, 113 Idaho 142, 142–43, 742 P.2d 397, 397–98 (1986). In each of these cases, this Court held that the property owners were not entitled to compensation because the "right of access does not encompass a right to any particular pattern of traffic flow or a right of direct access to or from both directions of traffic." *Bastian*, 97 Idaho at 447, 546 P.2d at 402; *see also Brown*, 124 Idaho at 43, 855 P.2d at 880; *Merrit*, 113 Idaho at 145, 742 P.2d at 400 ("Private property owners do have a vested property right in ingress and egress between an adjoining alley and their private property. . . . They do not, however, have a vested right in ingress to and egress from the alley to an adjoining street.").

So where does this leave Bear Crest in this case? First, while ITD did not take any land by closing the intersection, it did take the reserved easement of the landowner. Second, after

eliminating the intersection, Bear Crest continued to have access to Highway 20 via the Thornton Interchange. But unlike *Bastian*, *Brown*, and *Merritt*, ITD did not make minor alterations to the flow of traffic. Instead, ITD shifted access to Bear World from Highway 20 to the Thornton Interchange, about 1.5 miles north of the eliminated intersection. Finally, ITD is correct that an abutting landowner may have the right to access an abutting road, but not at any given point. *See Merrit*, 113 Idaho at 145, 742 P.2d at 400.

Appellants rely on *Nelson Sand & Gravel* and *HI Boise* for the proposition that substantial impairment is shown by a decrease in property value. For support, Appellants introduced an expert report below demonstrating the loss in property value and lost profits Bear World expected to sustain. This report was unrebutted below, because ITD contended that there was no taking; it did not provide expert testimony on lost property values and profits. ITD argues the district court correctly applied the "circuitous but reasonable" standard.

The parties' arguments merge two distinct concepts. This Court in *HI Boise* stated, "state action that merely results in a change in traffic flow requiring traffic to reach property by a more circuitous route does not amount to a taking as a matter of law." 153 Idaho at 338–39, 282 P.3d at 599–600; *see also James*, 88 Idaho at 179, 397 P.2d at 770. In other words, a decrease in property value is not relevant in determining whether access has been substantially impaired. Indeed, the plaintiffs in *James* claimed that the value of their property decreased by $40,000. 88 Idaho at 174, 397 P.2d at 767. That said, this Court held that their access had not been substantially impaired. *Id.* at 179, 397 P.2d at 770. But in *Nelson Sand & Gravel* we stated, "substantial impairment of an access *which decreases the market value of land remaining after condemnation* is compensable." 93 Idaho at 583, 468 P.2d at 315 (emphasis added). In *HI Boise*, we attempted to differentiate these two concepts:

> Like *Fonburg*, *Nelson Sand & Gravel* involved more than a mere traffic diversion, but rather a four-and-a-half-mile 'substantial impairment' of access constituting severance of a property right. Further, *the change in access was a direct result of the physical taking* rather than an incident of some accompanying regulatory action.

*HI Boise, LLC*, 153 Idaho at 340, n. 11, 282 P.3d at 601, n. 11 (emphasis added, citation omitted); *see also State, Dep't of Transp. v. Grathol*, 158 Idaho 38, 47, 343 P.3d 480, 489 (2015).

A careful reading of these cases reveals two distinct issues: substantial impairment of a right to access and severance damages. When land is physically taken, condemned, and *severed* from the remaining parcel, decrease in market value of the remaining property is relevant when

determining damages. *Grathol*, 158 Idaho at 47, 343 P.3d at 489; *HI Boise, LLC*, 153 Idaho at 340, 282 P.3d at 601; *Nelson Sand & Gravel, Inc.*, 93 Idaho at 583, 468 P.2d at 315. But when access rights are simply lost by regulatory action and not a physical taking of land, substantial impairment is measured by whether remaining access is reasonable and alternate routes are not too circuitous. *See James*, 88 Idaho at 177, 397 P.2d at 770; *HI Boise, LLC*, 153 Idaho at 338, 282 P.3d at 599; *Bastian*, 97 Idaho at 447, 546 P.2d at 402; *Mabe v. State ex rel. Rich*, 83 Idaho 222, 228–29, 360 P.2d 799, 802–03 (1961) (explaining that a decrease in market value is considered after a finding of substantial impairment).

Here, because ITD did not physically take land belonging to Appellants, substantial impairment is measured by whether the remaining access is reasonable, rather than simply looking at whether the market value of Appellants' property has decreased. *See HI Boise, LLC*, 153 Idaho at 338, 282 P.3d at 599; *James*, 88 Idaho at 179, 397 P.2d at 770; *Grathol,* 158 Idaho at 47, 343 P.3d 489 (explaining that severance damages, which consider the market value before and after the take are "the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned . . .").

We hold that Bear Crest's access to Highway 20 has been substantially impaired by ITD. Bear Crest had immediate access to Highway 20 prior to 2016. At the time ITD closed the intersection, Bear World Road had not been completed. As the district court noted, before opening Bear World Road, Bear Crest's only access "was a somewhat circuitous route in excess of 5 miles (i.e., in excess of 10 miles roundtrip between the [Thornton] Interchange and [Yellowstone] Bear World)." Comparing this to Bear Crest's near *immediate* access in 2016, this added mileage on county roads constitutes substantial impairment to its right to access Highway 20. *See State v. Rascoe*, 178 S.W.2d 392, 393 (Tenn. 1944) (seven-mile diversion compensable); *State ex rel. Dep't of Highways v. Linnecke*, 468 P.2d 8, 9 (Nev. 1970) (one-and-a-half-mile diversion compensable); *Tchrs. Ins. & Annuity Ass'n of Am. v. City of Wichita*, 559 P.2d 347, 351 (Kan. 1977) ("tortuous and circuitous route" of approximately two miles constituted substantial impairment).

An action for inverse condemnation accrues at the time of interference with the landowner's property. *Nelson Sand & Gravel, Inc.*, 93 Idaho at 579, 468 P.2d at 311. Thus, ITD's arguments about Bear World's opening in 1998 are misplaced. Bear Crest's claim arose in 2016, not in 1998. Accordingly, Bear Crest's right to access Highway 20 by virtue of its status as an

22

abutting landowner has been substantially impaired, and the district court improperly granted summary judgment in favor of ITD.

### 3. Public Trust/Dedicated Access

In Appellants' opposition to ITD's motion for summary judgment, they argued ITD took property dedicated to the public trust as an easement. (citing *Killinger v. Twin Falls Highway Dist.*, 135 Idaho 322, 17 P.3d 266 (2000)). But the district court rejected this argument because the alleged access right was created by the Gideon deed; therefore, it was particular to the Gideons, not the public.

Appellants' public trust argument fails. "The party alleging that the owner intended to *dedicate* the land for public use bears the burden of proof." *Rowley v. Ada Cnty. Highway Dist.*, 156 Idaho 275, 278, 322 P.3d 1008, 1011 (2014) (emphasis added). In *Rowley*, the critical question was whether the landowner "clearly and unequivocally intended to dedicate" the land for public use. *Id.* Applying that standard here, there is no clear and unequivocal intent to dedicate the land for public use. And, unlike the landowners in *Killinger*, there was no dedication explicit in the Gideon deed, nor is one suggested on the record before us. The Gideon deed simply reserved access to the county road connection for the owners of the land and their successors—not for the general public. The district court did not err when it ruled the public trust doctrine does not apply. The Gideon deed does not express any intent to dedicate the land for public use. Furthermore, because the County Road Connection was never dedicated to the *public* as an access easement, the fundamental nature of its use did not change.

### 4. Conclusion

Appellants advance three legal theories to support their inverse condemnation claim here: 1) Access easement through the Gideon deed, 2) access rights as an abutting landowner, and 3) access dedicated to the public trust/dedicated use. We reverse the district court's grant of summary judgment because the Gideon deed and Bear Crest's access rights as an abutting landowner support a claim of inverse condemnation. We affirm the district court's rejection of the public trust/dedicated use theory.

Much like the breach of contract claim, the parties dispute how to correctly value damages to Bear Crest's property. Bear Crest argues damages should be measured by the "larger parcel" which would include parcels without the Gideon deed in the chain of title. *See Grathol*, 158 Idaho 38, 44, 343 P.3d 480, 486 (2015) (in a partial takings case, the larger parcel is determined by: (1)

unity of title, (2) contiguity, and (3) unity of use). ITD argues that some parcels now owned by Bear Crest do not have the Gideon deed in the chain of title. Other parcels purchased from the Nelsons and Allreds did not contain the same reservation of access as the Gideon deed. Thus, measuring damages alleged to *all* parcels, even those without the Gideon deed in the chain of title, improperly expands the scope of the reserved access. These are damage issues to be resolved on remand as noted by this Court in *Mabe*, 83 Idaho at 228–29, 360 P.2d at 802–03. We will not address them further in this appeal.

## V. CONCLUSION

For all these reasons, we reverse the district court's order granting ITD's motion for summary judgment and remand with instructions to grant partial summary judgment for Bear Crest Limited on both of its claims. ITD has breached the Gideon deed by eliminating access to the County Road Connection. We have determined that a taking occurred on two grounds: (1) the Gideon deed's reservation of access rights and (2) the substantial impairment of a landowner's access to an abutting public way. Therefore, we vacate judgment in ITD's favor and direct partial summary judgment on the contract claim, and that judgment be entered for Bear Crest on the inverse condemnation claim, reserving damages questions for further proceedings upon remand. The district court should also evaluate whether Ferguson and Bear World Inc. have standing and, if so, analyze the merits of their claims. Costs are awarded to Appellants under I.A.R. 40(a).

JUSTICES BRODY, MOELLER, ZAHN, and MEYER CONCUR.